Opinion of the Court.
Thomas Turner, on the 12th of October, in the year 1811, made his will. In 1814, there being some opinion entertained by his relatives and family, that he was incapable, through age and infirmity, to manage his estate, he conveyed it to two of his relatives, in trust, for his own use during life, and afterwards to be distributed agreeably to the will aforesaid. On the 18th of May 1815, an additional memorandum was written on the will, stating that some of the subscribing witnesses lived out of the state, and declaring that he re-acknowledged it. This memorandum was subscribed by him, and witnessed by others. On the 27th May 1815, a new will was written, containing, substantially, the provisions of the former, except that a negro woman, previously devised to his daughter, was, in the last will, devised to her alone, free from the control of her husband, during her life, and after her death to go to her children. This was also attested by witnesses. The last will was produced to the court below, for probat, by a part of the family of the testator, and was opposed by another part, on the ground, that the testator’s mind was impaired by age, *102 at the making thereof, and that he was in his dotage. This opposition was sustained by the court below, and the will rejected ; to reverse which decision, a writ of error is prosecuted. A part of the family, then tendered the will of 1811, for probat ; which was, in like manner, opposed, not only on the ground of the dotage of the testator at the execution of this will, but also because only one of the subscribing witnesses was produced. This last ground was sustained by that court, and that will rejected likewise ; from which decision an appeal was taken. So that both wills are now brought before this court, at one trial; and it is contended that either one or the other must be sustained.
There is less presumption of sanity at the time when a will was executed, where the testator is shown to have been previously afflicted with the mental debility attending old age, than there is where the mental malady is ordinary lunacy.
1. The validity of the will of 1815, rests solely on the sanity of the testator at its execution. On this point there is a considerable contrariety of evidence. It is evident, that the dotage of the testator was apparent, at the date of this will, and that it was discovered by many, and exhibited by such acts and conversation as could leave no reasonable doubt, that his faculties were impaired. It was not, however, discovered by others, who had interviews with him.
That, to make a will valid, the testator, at its execution, must be of sound disposing mind and memory, the statute explicitly requires. That every mental defect, would not incapacitate a testator to make a will, must, however, be granted by every one. But, to say how much or how strong an exercise of mind is necessary, or how great a defect will incapacitate, in making a will, is a matter difficult to be reduced to certain and definite rules, and must always be subject to this difficulty, while we are not furnished with modes of measuring or trying the human mind. This difficulty is often increased, by reason of the testator being, as this one was, apparently right in his mind on some subjects, and defective on others. In the present case, the testator always appeared uniform and correct on the subject of disposing of his estate at his death, and on that matter he discovered right reason in many conversations. The last will agrees with the former, except in the instance mentioned above, and it corresponded with his settled intention, expressed before his mind had lost its energies. Under such circumstances, some difficulty has presented itself, in the mind of the *103 court, with regard to this will. It cannot, however, be denied, that the testator’s mind was impaired before it was made, and that the injury was that to which age is incident, and of course not similar to lunacy of other descriptions, which frequently admit of clear lucid intervals.
Although the act of assembly requires the attestation of two witnesses to a will at the time of its publication, proof of it by the testimony of two witnesses in court, is not an indispensable pre-requisite to its being admitted to record.
Under such circumstances, it is hard to determine, frequently, when the mental derangement operates ; but as the derangement of this testator was such as could not be subject to any material vicissitude, and by the proof he could not be capable to act as a rational man on many subjects, we cannot sustain this will, and conceive there was no error in the county court, in refusing to admit it to record.
The will of 1811 next presents itself. Even at the date of this will, there is considerable evidence tending to show that his mind was impaired. But the proof is not so satisfactory, as to date, as to induce us to regard it as decisive. Besides, the proof of sanity at that date, is very strong; and even some of those witnesses who now depose to their opinion of his incapacity at that time, have, since the making that will, by many acts, exhibited a belief in his then disposing capacity. We, therefore, conceive that this will ought not to be rejected, on the score of insanity in the testator. This will cannot derive any aid from the memorandum written at its close, and the republication in consequence thereof, and the attestation of it at that time; for this transpired only a few days before the making of the latter will, and is, therefore, subject to all the objections of incapacity at its date, which we have determined must prevail against the will of 1815.
2. At the execution of this will 1811, it appears to be attested by three subscribing witnesses. One of them is a distributee, and both he and another of the witnesses reside in the state of Missouri, and only one of the attesting witnesses has been produced before this court, who was the writer of the will. It has heretofore been decided by this court, in the case of Lindsey vs. M'Cormack, and White, &c. vs. Harper, &c. that one subscribing witness is sufficient to admit a will to record; or, in other words, that although the statute requires the attestation of two, yet it does not require the production of both at the probat, and that one is competent to prove the acknowledgment and *104 sanity of the testator, and the attestation of both witnesses in his presence ; especially, in cases where the other witness is not amenable to the process of the court. These decisions, however, do not conclude the present question ; for although the witness is positive as to the publication of the will by the testator, and his sanity at the time, and that he himself attested the will, yet he cannot recollect that either of the others attested it at the time, in the presence of the testator, although he remembers that both of these witnesses were present and composed part of the company. He also recognizes their hand writing, and other witnesses have proved satisfactorily that the attestation is in the hand writing of these absent witnesses.
Where the personal attendance of both the subscribing witnesses cannot be enforced, proof by one of them of the sanity of the testator and of the attestation of both the witnesses in the presence of the testator, is sufficient.
The act of assembly authorising the issuing a dedimus to take the depositions of attesting witnesses abroad, may or may not be resorted to, as the party interested in proving the will may be able or not, to obtain satisfactory at home.
On this proof, it is contended, that in point of fact, it does not establish the execution of the will, and that it is inadmissible in law, and does not come up to the requisitions of the act of assembly regulating wills. In taking the probat of wills, county courts, as well as this court, in revising their decisions, become triers of fact as well as law, and ought to be satisfied with such presumptive evidence as ought rationally to convince the minds of jurors. We cannot conceive that any jury could rationally doubt, under the circumstances of this case, which raise such a violent presumption that the rest of the witnesses did then attest the same acknowledgment of the testator, which was heard by the witness produced ; and this court cannot doubt that the fact was so.
On the law of the case, it has been decided by this court, in the case of Happy's will, 4 Bibb 553, that inferior evidence, in the probat of wills, might be resorted to, where the highest grade was unattainable. It has also been frequently decided, that where subscribing witnesses were out of the state, in case of other writings, their testimony might be dispensed with ; and we see no objection to applying this doctrine to the case of wills, where one of the witnesses has proved that the testator did comply with the law in publishing the will. It is true, the act of assembly points out the mode in which a dedimus may issue, to take the proof of a will; but it does not compel parties to resort to it. It only furnishes the means of taking the proof, where it cannot otherwise be had. And if legal testimony of another character can be adduced, a par *105 ty ought not to be excluded from its benefit, until he resorts to a dedimus.
We, therefore, conceive that the court below erred in rejecting the will of 1811; and that decision must be reversed with costs, and the will of 1811 be admitted to record in this court, as fully proved, and then be transmitted to the court below, to be there recorded, as fully proved before this court.
In the case of the will of 1815, the decision of the Court below must be affirmed with costs.