## TEVIS v. PITCHER.

The several statutes of this State relating to wills, do not apply to wills executed previous to their passage.    There is no provision for the probate of such wills, and they must rest for their validity upon the laws under which they were made.

Under the Mexican law, as enforced in California, such a proceeding as the probate of an open will was unknown.    The will took effect as a conveyance upon the death of the testator.    It was valid, if made in the presence of three witnesses; and, by the custom which prevailed in California, and obtained the force of positive law, two witnesses were sufficient.

Proof of such custom in force in California previous to the formation of the State government, is admissible.

Where a will was attested by two witnesses, and made before a person who was a sindico: *Held,* the fact that such person signed the instrument as sindico did not the less render him a witness.

In matters of evidence, as in the mode of remedy, the law of the forum governs.

Where the testator and the witnesses to a will are dead, proof of the signatures of the witnesses and of the testator will be sufficient evidence of its due execution.

APPEAL from the District Court of the Sixth Judicial District, County of Sacramento.

This was an action of ejectment, to recover certain lands situated in the county of Sacramento.    The facts of the case are briefly these :   In December, 1844, the then Governor of California made a grant to Eliab Grimes of a large tract of land, situated in the county of Sacramento, including the premises in dispute. Under this grant, Eliab Grimes entered into possession of the land, and continued in the possession, use, and enjoyment of the same, until his death, on the seventh of November, 1848.   On the eighteenth day of April, 1845, Eliab Grimes having, previously to that time, made and published his will, and also a

30

codicil to that will, made and published a second codicil, by which he devised all his right, title, and interest in the land contained in his grant, to his nephew, Hiram Grimes. This second codicil is in the Spanish language, and is as follows:

"SELLO PRIMERO, OCHO PESOS.—*Habilitado provisionalmente por la Aduana maritima del puerto de Monterey en el Departamento de las Californias para los años de mil ochocientos cuarenta y cuatro, y mil ochocientos cuarenta y cinco.*

"MICHELTORENA.                    PABLO DE LA GUERRA.
[SEAL.]

"Yo, Eliab Grimes, ciudadano Mejicano por naturalizacion, teniendo añadir un codicilio á mi testamento hecho anteriormente y deseoso, hacerlo en todo forma de ley establecido en este Republica; hago y declaro de ser de mi voluntad y intencion. En presencia del Señor Alcalde de este jurisdiccion, su secretario, y dos testigos de asistencia, en el modo siguiente:

"*Codicilio 2o.*—Doy y endono a Hiram Grimes mi sobrino, todo el derecho y titulo que me concedio el Gobierno al rancho nombrado el 'Rancho del Paso,' en la Alta California, situado en el Rio Americano, como se diseña y consta en el plan y titulo cuyo original existe en los archivos de Monterey; junto con todo el ganado, caballada, y demas enséres que haya en dicho rancho, como tambien todos los edificios, y utensilios de labranza y cocina, y cualquiera otra clase de propiedad mia que se encuentre, deduciendo siempre cierta proporcion de todo el ganado, caballada y demas animales y esquilmos, para los que han tenido cuidado de dicho rancho, en pago de sus servicios segun el convenio hecho. Y para que conste, firmo, en el modo espresado arriba, hoy dia diez y ocho de Abril, de 1845, en el pueblo de San Francisco de Asis, y á la vez queda depositada una copia en los archivos del mismo.                    ELIAB GRIMES.

"Ante mi, en ausencia de los dos alcaldes,
"ROBERTO T. RIDLEY, Sindico.

"Testigos: Nathan Spear, Guillermo Hinckley."

[TRANSLATION.]

"SEAL FIRST, EIGHT DOLLARS.—*Provisionally empowered by the maritime custom-house of the port of Monterey, in the department of the Californias, for the years eighteen hundred and forty-four and eighteen hundred and forty-five.*

"MICHELTORENA.                    PABLO DE LA GUERRA.
[SEAL.]

"I, Eliab Grimes, a Mexican citizen by naturalization, having to add a codicil to my testament heretofore made, and desirous of doing it in conformity with law established in this Republic, do make and declare it to be of my will and intention, in pre-

sence of the alcalde of this jurisdiction, his secretary, and two witnesses of assistance, as follows :

"*Codicil Second.*—I give and bestow to Hiram Grimes, my nephew, all the right and title which the government conceded to me to the rancho known, or named, as the 'Rancho del Paso,' in Upper California, situated on the American River, as is delineated and appears in the plan and title, the original of which exists in the public archives of Monterey, together with all the cattle, horses, and other animals that are on said rancho, as also all the buildings, and laboring and cooking utensils, and all other property of mine which is met with on said rancho, deducting always a certain proportion of all the cattle, horses, and other animals, and of their produce, for those who have had the care of said rancho, in payment of their services, according to the agreement made. And in order that it may be evident, I sign in the manner above expressed, this eighteenth day of April, 1845, at the pueblo of San Francisco de Asis, and at the same time there remains deposited a copy in the archives of the same.

"ELIAB GRIMES.

" Before me, in the·absence of the two alcaldes,

" ROBERTO T. RIDLEY, Sindico.

" Witnesses :    Nathan Spear, Guillermo Hinckley."

On the trial, it was admitted that the testator, witnesses, and Sindico, were dead, that their native tongue was the English, and that their respective signatures to the codicil were genuine, and it was proved that a custom, as to the execution of wills, existed in California prior to the establishment of the State government, by which two witnesses to a will were sufficient. Hiram Grimes entered into possession of the land devised by this codicil, and remained in possession until the ninth of August, 1849, when he sold the same to Samuel Norris. The plaintiff purchased the premises, April 17th, 1857, at a sheriff's sale made under an execution issued upon a judgment recovered against the said Samuel Norris, and on the twenty-first of October following, the time of redemption having elapsed, obtained a sheriff's deed for the same. The defendant entered upon the premises for which this action is brought, subsequently to the title acquired by Samuel Norris, and was in their occupation at the commencement of the action. To the introduction of the codicil, the defendant's counsel made the same objections which are stated as his points on the appeal. The objections were overruled, and exceptions taken. The plaintiff had judgment, and the defendant appealed.

*Robert Robinson* for Appellant.

I. The Court erred in admitting the document, offered by the

plaintiff in evidence, as a codicil to the last will and testament of Eliab Grimes, for the following reasons :

1. Because the same has never been probated, and can not be admitted in evidence for want of such probate ;

2. Because the District Court has no jurisdiction, and can not probate the same ;

3. Because it does not purport to be a public instrument, authentic, by being executed before a notary public or alcalde, under the Mexican law, but a private writing executed in presence of witnesses, and that those witnesses are the only ones that could make proof of such a will under the Mexican law ;

4. Because there is no statement in the paper itself—offered as the second codicil to the said last will and testament—nor other proof offered, tending to show that the disposition was dictated by the testator in presence of the witnesses, or read over to the witnesses, in the presence and hearing of the testator, they being all together, at one and the same time, without interruption or turning aside to any other act; and that having been so dictated or so read over, was declared by the testator to the witnesses to be his last will and testament.  And because the proof of the signatures can not raise a presumption that the witnesses thereto knew the contents of the will, or that the essential formalities required by the Mexican law for the solemnization of wills, were in any respect observed, and, therefore, the testimony offered was inadmissible ;

5. Because said document does not purport to have been executed in the presence of three witnesses—the least number required by the law in force in California at the time when it purports to have been made—without an escribano or alcalde; and that the sindico, not having professed to act as a witness, and being without authority to act in the capacity assumed by him, is not to be considered a witness thereto ;

6. Because it does not appear from any proof offered that the testator, whose native tongue, it is admitted, was the English language, understood the language in which said codicil is written.  Nor is it shown that there was present a sworn interpreter who explained and interpreted the same to him in the presence, and hearing, and understanding of the witnesses, all assembled together at one and the same time ;

7. Because it is not shown that all of the witnesses understood the language in which said codicil is written, or were able to read and fully understand the same, and that unless such were the facts, such witness or witnesses were incompetent to act as such, and the said document is void ;

8. Because it can not be presumed, from the genuineness of the signatures, that Eliab Grimes dictated the contents thereof to the witnesses ;

9. Because said document, not being authenticated as a public instrument by competent authority, is a mere private writing or memorandum, having no force or validity as a will, though all the signatures thereto be genuine, unless accompanied by proof of facts not appearing in any part of said document, or in the attestation thereto, to wit, that the testator himself dictated the contents of said document to the witnesses, all assembled together at one and the same time, or that the same was read by him, or some one else in his presence and hearing, and that of the witnesses—all assembled together at one and the same time—and was understood by him and them; and, so understood, was declared by him to the witnesses to be his last will and testament.

II. The Court further erred in permitting proof, by witnesses, of the existence of any custom in California as to the mode of making wills, and the number of witnesses called to act in the making of wills, prior to any change in the Mexican law by the State Government :

Because the mode and manner of making wills being regulated by the written law, no custom can be proved to repeal or deviate from said law, and because the same relates to the mere understanding of the witnesses as to the custom of the country, and is mere hearsay, and therefore inadmissible.

The codicil under consideration has never been probated, and it does not bear upon its face any evidence that the testator and witnesses signed in the presence of each other, and as there was no proof thereof, it should not have been allowed in evidence.

It purports to have been made before a probate system was adopted, and can not, therefore, be acted upon in any Probate Court.   Grimes' Estate v. Norris, 6 Cal., 621.

The District Court has no jurisdiction.   The Constitution and laws expressly give it to the County Judge, doing business as a Surrogate or Probate Court.   It does not purport to be executed before an alcalde, or other officer authorized to authenticate public documents, and is not a public writing, (*escritura publica*,) and can not have force as such, but is a mere private memorandum, which, upon being proved, proves nothing, and has no force as a will.   The will obtains no force or effect from the writing as such.   It is a nuncupative will, that is, under the Mexican law, a will by oral announcement or declaration.

It is this oral announcement or declaration that constitutes the will, and not the writing.   The writing does not prove this oral announcement or declaration ; nor does proof of the writing establish it.   It must be proved by witnesses, and the only witnesses that can prove it are those to whom it was made.   They being dead, there is no mode left by which that proof can be made, and the document has no force as a will.

It is not attested by the proper number of witnesses, as re-

quired by the Mexican law in force at the time of its execution. Panaud *v.* Jones, 1 Cal., 488.

The Sindico Ridley not having professed to act as a witness, or not having signed as such, can not be regarded as a witness.

*J. B. Haggin* for Respondent.

1. A will made, and taking effect by the death of the testator, before the establishment of the present State government and the various acts concerning wills, is not required to be probated, but takes effect as a deed upon the death of the testator. Grimes' Estate *v.* Norris, 6 Cal., 621; Castro *v.* Castro, Ib., 158; Panaud *v.* Jones, 1 Cal., 508.

2. Under the Mexican law, three witnesses to an open or unsealed will, without an escribano or alcalde, were all that were required; and, under the custom existing in California prior to the establishment of the State government, two were sufficient. Panaud *v.* Jones, 1 Cal., 504; Castro *v.* Castro, 6 Cal., 158.

3. Custom may be proven, and when proven has the effect of law. Panaud *v.* Jones, Castro *v.* Castro, (above cited;) Von Schmidt *v.* Huntington, 1 Cal., 55.

4. A usage or custom once recognized by judicial decision, becomes the law of the land, and no further proof is necessary to establish it; and no evidence is admissible to contradict the fact as laid down by the Court. Cookendorfer *v.* Preston, 4 How., 326; Edie *v.* East India Co., 2 Burr., 1221; Poston *v.* Rassette, 5 Cal., 468.

5. The rule of evidence is the law of the forum, and such law must prevail in all judicial proceedings. Story Conf. of Laws, § 258, note 2, and authorities cited; Bank U. S. *v.* Donally, 8 Pet., 361, 373; Lewis *v.* San Antonio, 7 Tex., 308.

6. The witnesses being all dead, the will is to be proved by proving the handwriting of all the subscribers to it. Price *v.* Brown, 1 Bradford, 291, and authorities there cited; Jauncey *v.* Thorn, 2 Barb. C. R., 39; Peebles *v.* Case, 2 Bradford, 226; Matthew's Presumptive Evidence, 42; Hands *v.* James, 2 Com., 531; Brice *v.* Smith, Willes R., 1; Croft *v.* Pawlett, 2 Stra., 1109.

7. The will in this case has three competent attesting witnesses—the number required even by the strict rules of Mexican law. Panaud *v.* Jones, 1 Cal., 504.

8. By custom, as established by proof in this case and by judicial decision in the cases of Panaud *v.* Jones, and Castro *v.* Castro, two witnesses are sufficient, and the will is good.

9. Upon proof of the signatures, the witnesses being all dead, the presumption of law arises that all the formalities essential to the due execution of the will have been complied with. Price *v.* Brown, 1 Bradford, 291; Jauncey *v.* Thorn, 2 Barb. C. R., 40; Peebles *v.* Case, 2 Bradford, 226.

And presumptions are to be liberally indulged in favor of the

due execution of wills, when, from lapse of time, or other circumstances, it may be difficult to prove the facts directly.   Jauncey v. Thorn, cited above.

10.  If, under the Mexican law, this will could only be proved by the witnesses thereto, and under that law, they dying, there is no mode left of proving the same, then the will must fail for want of such proof.   The same now being offered in our Courts, must be proved as at common law, and from proof of the signatures the same presumptions arise as at common law, however insufficient and futile such proof might have been under the Mexican law.   See authorities cited above.

We will endeavor to reply to all the points made by the appellant, and in the order stated by him.

The first point, " that the will or codicil had never been probated," is untenable, under the decision in the case of Grimes' Estate v. Norris, 6 Cal., 621, in which this Court has decided that " not only does the statute fail to require wills, executed before its passage, to be probated, but on examination of the different sections, we are forced to, the conclusion that this was not a *casus omissus*, and that the Legislature actually intended to exclude them from the operation of the statute altogether."

" When we reflect that the laws of California did not require a will to be probated, and that numerous rights had grown up under this system, it can not be supposed, in the absence of some provision to that effect, that the Legislature intended to unsettle those rights, or open them afresh."

" In fact, by the decision of this Court in the case of Castro v. Castro, it was determined that a will rested upon the same basis as a conveyance, and operated as a deed, unless in case of some express statute requiring it to be probated, and that such a proceeding as the probate of a will was unknown in California."

From these quotations, there can not remain the shadow of a doubt upon this point.   See, also, Panaud v. Jones, 1 Cal., 506.

The second point, " that the District Court has no probate jurisdiction, and can not now probate the same," is answered by the first, and the decision in the case of Grimes' Estate v. Norris.

As to the third point :  It is true that it does not purport to be executed before a notary, or alcalde.   But it does purport to be executed before the sindico, in the absence of the two alcaldes, and we contend that every intendment and rule of law is in favor of the authority of an officer executing any power, and from the fact of his having executed that power, the presumption in favor of his authority arises.

But it is immaterial whether he had the power or not.   If he did not act, or could not act in his official capacity, then he was not the less present and witness to the execution of the will.

In the case of Panaud v. Jones, 1 Cal., 488, which is a leading case upon the subject of wills under the Mexican law, and which

very ably and elaborately reviews every branch thereof, the will was executed before, or rather signed by Pedro Chivallo, (who was proved to have been the Judge or alcalde at the time of its date,) and José de Jesus Mesa and Vincente Juarez, witnesses—Mr. Justice Bennett says: "I am of opinion that the will of Alviso was a valid will when tested by the strict rules of the Mexican or Spanish law;" and in his inquiry as to what sort of a testament under Spanish law the one under consideration in that case was, he comes to the conclusion, that it was an open, nuncupative, or unsealed will; that to such a will three witnesses will suffice, according to all authors, and that even this number may sometimes be dispensed with; that there were three competent attesting witnesses to the will of Alviso, and that the officer, though not named as a witness, and not professing to act as such in the execution of the will, was one of the three; and that there was nothing in the fact of Chivallo's being alcalde, which disqualified him from being a witness.

If, then, Chivallo, in the case of Alviso's will, was a competent witness, and was, in fact, to be regarded as such; by the same rule the Sindico Ridley, in this, is a witness, and is to be so considered.

The Court, in the same case, after stating the formalities necessary to be observed with regard to sealed wills, say : "It would seem that the observance of these formalities with respect to an open or nuncupative will, would be a useless ceremony. The will of Alviso was made before an alcalde. But even though it were not made before any officer, yet being reduced to writing, and being attested by the requisite number of witnesses, it might have been proved at any time, and the omission to reduce it to the form of a public writing, (*escritura publica*,) would not effect its validity, for this may be done and the will be registered for the security of all persons, upon the petition of any party interested." 2 Sala. Mej., § 37.

What is the meaning of the expression used in the above quotation?—"it might have been proved at any time." It is significant language, and has some meaning, and the only intelligible and sensible meaning of it is, that it may be proved by the usual and ordinary modes of proof:  Primary evidence, if to be had, such as the testimony of the subscribing witnesses, if living; if not, then secondary evidence, such as proof of their signatures, they being dead.  Surely, under no system of law or reason can the rights of the devisee be affected by the death of the witnesses to the will.

By the will, the title immediately vested, and it took effect as a deed.  Can then the devisee be divested of that title by the death of the witnesses thereto ?  This proposition is, upon its face, novel and startling : that, by the act of God, the death of a party with whom you have nothing to do, should divest you of

Tevis v. Pitcher.

the property before duly and properly invested in you. We contend that this is not the law, even under the Mexican jurisprudence, and no authorities can be produced to sustain it. It is not reason, nor common sense. But even if for a moment it can be supposed that, under the Mexican system, such is the law, it is not under our own, and we contend that it is a question of evidence only, and as to such, the law of the former, existing at the time of trial, is the law to control. Evidence constitutes no part of a right, it is only the means by which that right is ascertained and fixed; this process, then, by which the result is arrived at, is that of the forum. Story Conf. of Laws, § 558, and note 2, and authorities there cited. Bank of U. S. v. Donally, 8 Pet., 361, 373; Lewis v. San Antonio, 7 Tex., 308.

In the case of Lewis v. San Antonio, the question arose as to the presumption in favor of an ancient grant in Texas. The grant was claimed to have been made under the Mexican government. The Court held that, according to the common law, the uninterrupted possession of land, with the exercise of ownership, for the period of twenty years, raises the presumption of a grant, under which the possession must be supposed to have commenced, unless there are circumstances to rebut that presumption, and show that there could not have been a grant, that the common-law rules of evidence were introduced into the Courts of Texas as early as 1836, as then understood and practiced, and that those rules must govern the case at bar, as it is very clear that as to matters of evidence, the laws of the forum where the suit is tried must prevail.

"Proofs are made in our Courts conformably to the common law rules of evidence. Those being the law of the forum, must in general govern. These rules are sufficiently expansive to afford some mode of proof of every existing fact on which the rights of parties depend."

The proposition, then, being established that as to the evidence the law of the forum is to govern, it follows that if the will be sufficiently proven at common law, this exception is disposed of. The witnesses being all dead, the will is to be proved (according to common-law authorities) by proving the handwriting of all the subscribers thereto, and from such proof a due execution is to be presumed. Price v. Brown, 1 Bradford's Sur. R., 291.

Presumptions are to be liberally indulged in favor of the due execution of wills, when, from lapse of time or other circumstances, it may be difficult to prove the facts directly. Such is clearly the law in this case, where not only has there been such lapse of time, but many and various changes, both political and social, have transpired since the execution of the will and the death of the testator. These changes have rendered it more difficult to obtain proof than even the lapse of time. But we esteem our-

selves fortunate in being able to prove all that we regard as ne-
cessary—the verity of the signatures.   See Jauncey v. Thorn,
above cited; 2 Barb. C. R., 40; see, also, 2 How., 316.

As to the fourth point: In the case of Castro v. Castro, 6 Cal.,
one of the objections made to the will was, that it was not a con-
tinuous act; that during its preparation and execution there was
a turning aside to other matters.   The Court say:  "It may be
that this would vitiate the instrument, but why it should, or on
what grounds an instrument commenced and its execution sus-
pended for such purpose, can be invalidated, our ignorance of
Mexican law prevents us from determining."   But the whole
of this objection has been substantially answered in the reply to
the third point, just disposed of.   Whatever requisites or formali-
ties were required in the execution of the will, will be presumed
upon proof of the signatures.   See Price v. Brown, above cited,
in 1 Bradford, 291, and cases there cited; Panaud v. Jones, 1
Cal., 509.

That the Spanish law did not require that all the formalities
necessary to give effect to a will should appear on the face of it,
is decided by the Supreme Court of Louisiana, in the case of
Brown v. Powers, 3 Martin N. S., 458, marginal page; and it was
afterwards held, in the same State, in the case of Sophie v. Du-
plessis, 2 Ann., 724, under the Code which adopted a system more
rigid than that of the Spanish or Mexican law: "That it is not
necessary that a nuncupative will, under private signature,
should exhibit on its face evidence that all the formalities essen-
tial to its validity have been complied with.   It is unnecessary
to mention in such a will the fulfillment of any formalities.   It
is sufficient to establish, when the will is offered for probate, by
evidence, dehors the instrument, that the formalities required by
law have been observed."

As to the fifth point: This has likewise been substantially an-
swered before.   The paper purports to have been executed before
two witnesses, and Ridley, the sindico.   We have already seen
that Ridley was a competent witness, and is to be regarded as
such under the decision in the case of Panaud v. Jones, and
hence the will has three competent witnesses—the number ad-
mitted by the appellant to be sufficient.

It makes no difference whether Ridley professed to act as a
witness or not.   If he was a witness, and did in fact witness the
document, he is competent to testify as such, and proof of his
signature is admissible.

As well might it be said that A, being accidentally present at
a trade between B and C, could not testify to the same, because
he did not attend in the capacity of a witness to hear what trans-
pired.   Facts may be proved by any legitimate and proper testi-
mony.

The execution of the will is a question of fact, and if Ridley

saw it executed he may testify thereto, though he did not attend as a witness, or assume to act as such by name. Though, the fact is, he does expressly profess to act as a witness—he says: "Ante mi, [before me,] en ausencia de los dos alcaldes;" [in the absence of the two alcaldes.] What more could he say to make him a witness, even if it were necessary for him to announce himself as such?

As to the sixth and seventh points: The Court will judicially notice the fact that the Spanish language, in which the will is, was the language of the country at the time; that if the law did not require it to be in that language, the usage and custom of the country did. The subscribers were intelligent men, could write their names, and a reasonable presumption is, that they all understood what they signed, or were able to understand it, through interpretation or otherwise, one of them being an officer of the county. It was not necessary that there should have been present a sworn interpreter. It was sufficient, if by any means, either by their own knowledge, or through interpretation, or otherwise, the testator and witnesses did in fact understand the document. No authority can be necessary to sustain so plain a proposition of common sense.

As to the eighth point: From proof of the signatures, the witnesses being dead, the presumption of law is, that the will was duly executed, and if this was one of the essentials, then from such proof of all the signatures, the presumption of law is, that it was fully complied with.

As to the ninth point: This is answered before, in the answers to the preceding points. It is true, it is not an authentic document, unless being executed before Ridley, the sindico, in the absence of the two alcaldes, makes it so; and that it is a mere private writing. But our understanding is, that the only difference between an authentic instrument and one under private signature alone, is in the mode of proof; an authentic instrument, or one executed before a notary public, proving itself upon mere production—and the instrument under private signature, requiring to be proven when offered. It was reduced to writing, and, as we have seen, attested by the requisite number of witnesses; and, in the language of Mr. Justice Bennett, above quoted, in the case of Panaud *v.* Jones, it might have been proved at any time, and the omission to reduce it to the form of a public writing, (*escritura publica*,) would not affect its validity, for this may be done, and the will be registered for the security of all persons, upon the petition of any party interested.

We have before seen that it is not necessary that all the essential formalities to a will, under the Mexican law, should appear on its face; that it is sufficient, if they be proved to have been complied with; and that in case of the death of the witnesses, that proof is to be made by secondary evidence, to wit, the proof

of the genuineness of all the signatures; and from such proof the presumption arises that all the essential formalities have been complied with.

We think we have thus far shown that the will in this case was sufficiently executed when tested even by "the strict rules of the Mexican law," much more is it sufficient under the decisions in the cases of Panaud v. Jones, and Castro v. Castro. In these cases, this Court has decided that, according to custom existing in California prior to any change in the Mexican laws by the State government, two witnesses were all that were required in the execution of a will. We contend that that custom being once recognized by judicial decision, became the law of the land, and that the Court will judicially notice such law or custom for the future.

This must be so, else each case may present a different custom and a different law. That custom may be proved, and when proved has the force of law, this Court has repeatedly held. Panaud v. Jones, Castro v. Castro, before cited; Von Schmidt v. Huntington, 1 Cal., 56. That by custom, as ascertained in the cases of Panaud v. Jones, and Castro v. Castro, two witnesses are sufficient for the due execution of a will, is fully recognized, and now if it remains an open question, the next case may establish a different rule, and so it may fluctuate according to the industry of the parties interested in hunting up testimony upon the point. In the case of Cookendorfer v. Preston, 4 Howard, 326, it is decided that when a usage is sanctioned by judicial decisions, it becomes the law of the place, and no further proof is necessary to establish it. And it is said that no evidence is admissible to controvert the fact as laid down by the Courts. Parol evidence is not admissible to show that the usage was different at the time from what the Courts have solemnly adjudged it to be. See, also, Edie v. East India Co., 2 Burr., 1221; Poston v. Rassette, 5 Cal., 468.

In the latter case, Mr. Justice Heydenfeldt says: "Indeed, it may be a question, (not now necessary to decide,) whether, when a well established custom, extending over a large territory, has changed the general law, the Courts are not bound judicially to take notice of the change." Page 469.

But, for the purpose of leaving no question on this point, it was proven in this case that by the custom existing at the time of the execution of the will, and prior to any change in the Mexican law by the State government, two witnesses were sufficient to the due execution of a will, to which testimony the defendant excepted upon the ground: "That the mode and manner of making wills, being regulated by the written laws, no custom can be proved to repeal or deviate from said law, and that the same relates to the mere understanding of the witness as to the

custom of the country, and was mere hearsay, and therefore inadmissible."

FIELD J., delivered the opinion of the Court—TERRY, C. J., concurring.

This is an action to recover possession of certain premises situated in the county of Sacramento, and the only question presented by the appeal, for determination, relates to the validity of the second codicil to the will of Eliab Grimes, under which the plaintiff claims title. In December, 1844, Grimes obtained from the then Governor of California a grant of a large tract of land, including the premises in controversy, under which he entered into possession of, and held and enjoyed the land until his death in November, 1848. In April, 1845, he made a second codicil to his will, previously published, devising, by this codicil, to his nephew, Hiram Grimes, all his right, title, and interest in the land embraced in the grant. The codicil is attested by two witnesses, and purports to have been signed at the pueblo of San Francisco, before the sindico, in the absence of the two alcaldes. It was admitted, on the trial, that the testator, witnesses, and sindico, were dead, and that the signatures to the codicil were genuine.

The will and codicil took effect by the death of the testator previous to the establishment of the present State government, and the several statutes relating to wills do not apply to wills executed previous to their passage. There is no provision for the probate of such wills, and they must rest for their validity upon the laws under which they were made. This was expressly decided in relation to this same will, in the case of Grimes' Estate v. Norris, (6 Cal., 624.)

Under the Mexican law, as enforced in California, such a proceeding as the probate of an open will was unknown. The will took effect, as a conveyance, upon the death of the testator. It was valid if made in the presence of three witnesses, and even this number was not absolutely essential under the custom existing in California, and which obtained the force of positive law. By the custom which generally prevailed, as has been established in repeated instances by the most satisfactory proof, and been recognized by this Court, two witnesses were sufficient. Proof of the custom was given in this case. Similar proof was offered in Castro v. Castro, (6 Cal., 160,) and was held to obviate the objection to the will in that case, that one of the three attesting witnesses was incompetent. "That such customs may be proved," says the Court, "and that, when proved, they have the force of law, has been fully settled by the decision of this Court in the case of Von Schmidt v. Huntington, (1 Cal. Rep., 56,) in which it was held that, under the Mexican law, custom is sometimes allowed to control, limit, and modify the general rules

of the system, and even to establish a rule in direct contraven-
tion of positive law, and to obtain the force of law, as well where
there is no law, as to overturn previous law, which stands in
opposition to it." The force of the custom was recognized in
Panaud *v.* Jones, (1 Cal., 488,) in which case the Court, per Ben-
nett, J., says : " The custom with regard to the execution of
wills, so far as the testimony goes, appears to have prevailed
generally, and for a long time, in California. It may have been
the universal practice, from the first settlement of the country,
and I do not feel called on to overturn all titles in this State
which may depend on similar wills, because the edicts of Justin-
ian or the laws of Toro had not been known and strictly followed
by the simple and uneducated Californians."

Aside from the consideration of the effect of the custom esta-
blished by the proofs in this case, the codicil comes up to the
fullest requirements of the general law in the number of its wit-
nesses. It was made in the presence of three. The fact that
Ridley signs the instrument as sindico does not the less render
him a witness. He was present at its execution. It purports
to have been made before him. The will in Panaud *v.* Jones
was executed before, or rather signed by, the alcalde and two
witnesses, and the Court held that the will was valid, tested by
the strict rules of the Mexican or Spanish law. " Whether an
*escribano*," says Bennett, J., in delivering the opinion of the
Court, " may, at the same time, act in the double capacity of
*escribano* and witness, is a disputed point in Spanish law, Cove-
rubias holding in the affirmative, (Coverubias opera, Tom. 1,
page 58, cap. 10, §§ 2, 3,) and Sala the negative, (2 Sala Mej., 111,
§ 13.) I see nothing inconsistent in his signing as a witness,
and, where there is a diversity of opinion among writers of ap-
proved authority, we ought to adopt that opinion which is most
in unison with the former condition of things in this country,
and which will probably conduce the best to uphold and carry
into execution the intention of parties. There was, then, I think,
nothing in the fact of Pedro Chivallo's being alcalde, which dis-
qualified him from being a witness."

The objection to the validity of the will, from the number of
its attesting witnesses, being disposed of, the inquiry arises as to
the mode in which the will is to be proved. It is of no conse-
quence what proof under the Mexican law might have been re-
quired to establish a will in case of the death of its witnesses.
That law, whatever it may have been, was repealed at the first
session of the Legislature ; the statutes of this State relate only
to wills taking effect after their passage, and no special provi-
sion is made for a case like the present. The instrument must,
therefore, be established by the same proof by which instruments
similarly attested are established at the common law in case of the
death of their witnesses. Though the codicil depends for its valid-

ity upon the laws under which it was made, as to its proof the general rule applies, that, in matters of evidence, as in the mode of remedy, the law of the forum must govern. (Story's Conflict of Laws, § 558; Lewis *v.* San Antonio, 7 Texas, 308.) And under our system, the rule that if the attesting witnesses and the party are dead, proof of their signatures will suffice, is as applicable to wills as to other written instruments.

Thus, in Price *v.* Brown, (1 Bradford, 291,) the surrogate of the county of New York says that "it seems to be settled, that where all the witnesses are dead, and their handwriting and that of the testator have been proved, the due execution of the will will be presumed from such evidence, although it does not appear from the form of attestation that the witnesses subscribed the will in the presence of the testator. This was settled more than a hundred years ago, in Hands *v.* James, where the attestation clause not showing that the witnesses signed in the presence of the testator, it was left to the jury to determine whether or not it had been so done, and the Court held that all the witnesses being dead, and the matter being incapable of express proof, it would be intended that the witnesses had set their names to the will regularly; and this has been the law ever since. (Hands *v.* James, Comyn's R., 531; Croft *v.* Pawlett, 2 Stra., 1109; Brice *v.* Smith, Willes, 1; Lord Rancliffe *v.* Parkyns, 6 Dow, 202; Sampson *v.* White, 1 McCord, 74; Hopkins *v.* Albertson, 2 Bay, 484; Jackson *v.* Lugnere, 5 Cowen, 221; Jackson *v.* Le Grange, 19 Johns., 386; 2 Vesey, Sen., 460; 5 Vesey, 411; 9 Vesey, 381; 2 Bro. C. C., 504; 1 Littell, 101; 1 Wend., 406; 11 Wend., 599.) Again, it is undoubtedly necessary, in order to sustain such a presumption, that there exists no better mode of proving the fact. Absence out of the jurisdiction of the Court, as well as death, opens proof of the handwriting of a witness; and I see no reason why the same intendment of the regularity of the attestation should not be made in one case as in the other."

In the present case, the signature of the witnesses and of the testator are admitted to be genuine, and, under the authority of the cases cited, it will be presumed that all the formalities essential to the due execution of the codicil were complied with. Such presumption is especially just, as, from the lapse of time, the death of parties, and other circumstances, it has become impossible to prove directly the facts in relation to its execution.

Judgment affirmed.