## DE LA GUERRA *et al.*, EXECUTORS OF JOSE DE LA GUERRA, DECEASED, *v.* PACKARD, ADMINISTRATOR, ETC. of CESARIO LATAILLADE, DECEASED.

In 1849, Lataillade died intestate, at Santa Barbara, California.  His father-in-law, Jose de la Guerra, without legal authority, took possession of his assets, and undertook to settle his affairs.   Between 1849 and 1850, said Jose received $5,649.50, in money and gold dust, belonging to the estate; and between L's death and 1853, said Jose paid persons claiming to be creditors of the estate, $16,402.   Letters of administration upon the estate of Lataillade were issued in 1857, and in 1858, plaintiffs, as Executors of the last will of said Jose de la Guerra, presented to such Administrator their claim for $10,752.50, balance of payments by said Jose to L's creditors over the assets received.   Claim rejected, and this suit brought against the Administrator for the amount: *Held*, that Jose de la Guerra, so far as the common law governs the case, was an *executor de son tort*, and hence that plaintiffs cannot recover; that their testator acquired no rights by his payment of debts over and above the value of assets received, and could not thus make himself a creditor of the estate.

An *executor de son tort* at common law, though his acts are for many purposes valid, cannot derive from such acts any benefit to himself.   He cannot retain assets to pay a debt of his own, and if the estate be insolvent, it is no answer to an action to recover the assets, that he has paid debts equal to or exceeding their value.

*Query:* How far our statute has changed these common law rules?

Under the Mexican law, the heirs of Lataillade succeeded immediately to the estate, and became personally responsible for his debts; and Jose de la Guerra stood in the position of a voluntary agent, representing the heirs, and not the estate, and his payments were on behalf of the heirs and in discharge of their personal liabilty; and if any claim exist for these payments, it is against the heirs.

*Semble:* That the rights and liability of the heirs under the Mexican law were such that the estate of Lataillade was not subject to administration under our statute, and that whatever has been done in this respect is unauthorized and illegal.

APPEAL from the Second District.

In April, 1849, Cesario Lataillade died, intestate, at Santa Barbara, California, leaving a widow and infant children.   José de la

De La Guerra *v.* Packard.

Guerra, his father-in-law, took possession of his papers and assets, and undertook to settle his affairs.    At different periods between July, 1849, and November, 1850, said José de la Guerra received money and gold dust belonging to the estate of Lataillade, in all $5,649.50.    At different periods, also, between Lataillade's death and 1853, said José de la Guerra paid to creditors of the estate, and in taxes and other items, for the preservation of the property, the sum of $16,402.    José de la Guerra was never the legal representative of Lataillade—never having taken any steps to become legally authorized to settle the estate.    June 22d, 1857, letters of administration on the estate were granted to Antonio Maria de la Guerra, who resigned his appointment July 26th, 1858, and defendant Packard received letters in his stead.    José de la Guerra having died, plaintiffs were appointed Executors of his last will, in March, 1858, and in April of that year presented, as said Executors, their claim to the Administrator of Lataillade's estate for the sum of $10,752.50, the excess of payments made by their testator over and above assets received ; and in October following, they again presented the claim to defendant, the then Administrator of Lataillade's estate.    The claim was rejected, and plaintiffs now sue Packard for the amount.    The complaint was verified, and stated, among other things, the gross amount of assets collected by José de la Guerra, and in detail the payments made by him.    The answer simply denies, on information and belief, that the estate of Lataillade was justly indebted in the sums, and to the persons, as set forth in the complaint.

Plaintiffs had judgment for the amount claimed.    Defendant appeals.    The case was first argued at the Jan. Term.    A reärgument was ordered and had at the July Term.

*Eugene Lies*, for Appellant.

I.    The complaint shows no merits, and plaintiffs are without remedy.    The acts of their testator make him an *executor de son tort*.    "Almost any intermeddling after the death of the party, makes a person so intermeddling liable as an *executor de son tort*." (Harrison's Digest; Williams on Executors, 210.)    So far, then, as respondents' testator acted after the passage of an act adopting the

De Le Guerra *v.* Packard.

common law, he was an Executor of his own wrong.   So far as he acted previous to that act, he violated the law then in force.   By that law, his position was either the *negotiorum gestor*, of the Roman law, or the *administrador voluntario* of the Spanish law. For the liabilities and powers of such persons, for the circumstances that qualified his general right to recover his outlays, and for the presumptions of *animus donandi*, which arose against him from various sources, such as near kindred, etc., see Escriche's Diccionario, Title *Administrador voluntario* and authorities there cited. Certain duties were absolutely incumbent on him, such as accounting and making what is called the "Inventory Solemn."   (Febrero Novisimamente redactado, vol. 2, 178 ;  Elementos de Practica Forense, 281.)

In this case, therefore, we have a self-constituted Executor, who demands a settlement of account.   Even a rightful Executor could not succeed in the relief asked here.  (5 Wheeler's Am. Com. Law, 237 ;  *Myers* v. *Myers*, 1 Bailey's Eq. 23 ;  2 Am. Ch. Dig. 153, sec. 50 ;  *Kinney's Ex'rs* v. *Harvey*, 2 Leigh, 70 ;  see also *Kinard* v. *Young*, 2 Richard's Eq. 247 ;  5 Am. Ch. Dig. 223, sec. 800.) An *executor de son tort* never could come into court and ask to be refunded, when his payments of debts had exceeded the assets received.

II.   But if respondents have any remedy, they have mistaken it.   Appellant is merely an Administrator, and can approve none of the claims presented to him that are not justified by the statute. The claim here comes within none of the clauses which an Administrator can pay in regular course.  If respondents have any remedy, it is by bill in chancery against the heirs of Lataillade, and perhaps against the creditors whose claims stand approved.


*Halleck, Peachy & Billings*, for Respondents.

It was contended in the former argument by counsel for appellant that the position assumed by respondents' testator was that of an *executor de son tort* in English law, and that therefore his Executors cannot recover any money expended by him, no matter how beneficial such advances may have been to said estate, because

De Le Guerra *v.* Packard.

of the legal disabilities which the English Courts have attached to such *executor de son tort.*

It was denied by respondents' counsel that their testator was an *executor de son tort ;* but even supposing him to have been such in contemplation of law, it was argued that he was entitled in equity to recover.

But it is now directed that the case be argued upon the law in force at the death of Lataillade, in April, 1849.

By that law, no *administration,* in the sense understood by us, was required, or even admitted. The heirs succeeded to the estate immediately upon the death of the intestate.   The Mexican law regards the heir as the successor of the person of the deceased, and by virtue of such succession, as being substituted to the same rights, titles and powers over the property, and to the same obligations as to debts of the deceased, as belonged to the deceased himself.   It is by virtue of the successor's representing the person of the deceased, that he succeeded to his property, his rights, credits and obligations.   (Escriche, verb. Heredero ; Wood's Civil Law, 2 book, 155, 173 ; 2 Brown's Civil Law, 218 ; Domat's Civil Law, pt. 2, book 1, title 1, sec. 1 ; Febrero Mexicana, 2 tom. 103 ; Murillo, Testamientas, &c., passim.)

It follows that when Lataillade died, in April, 1849, his children succeeded immediately to all his rights and obligations.   There neither was, nor could have been any administration in the sense in which we use the term.   Respondents' testator did not act, nor could he have acted as an *executor de son tort.*   He could not have become an *executor de son tort,* for no such office was known to the law ; moreover, in this particular case there could not have been, under the law then in force, any administration, in the sense in which that word is used by the English Courts.   Lataillade died *ab intestato,* and his descendants were well known and present ; they occupied the same position, so far as the legal ownership and management of the estate were concerned, as the deceased himself would have occupied had he been living, except so far as they may have been incapacitated from such management by legal disabilities resulting from infancy, lunacy, &c., in which cases they would act by means of guardians, tutors, &c.

13

But it has been argued that respondents' testator assumed the position known in Roman law as a *negotiorum gestor* and in Spanish law as an *administrador voluntario*.

Let us admit, for the sake of argument, that this is true. The position of a *negotiorum gestor* or *administrador voluntario* in civil and Mexican law does not resemble that of an *executor de son tort* at the common law. The two are totally unlike. The *negotiorum gestor* in the civil law is simply an agent—" one who spontaneously and without authority undertakes to act for another during his absence."

" The law which enjoins upon us to do for others what we would that they should do for us, obliges those who happen to be in a conjuncture where the interest of absent persons is abandoned, to take what care of it they are able. The bare sentiments of humanity, not to speak of religion, recommend this duty towards absent persons, and engage those to look after their estates and concerns to whom the conjuncture of affairs has afforded an opportunity of so doing. And the Roman laws invite all sorts of persons to this duty ; giving to those who take care of the affairs of absent persons an assurance that what they have reasonably acted shall be confirmed, and that they shall be reimbursed the money which they shall have laid out to advantage." (1 Cushing's Domat, 572.)

" If he who has managed the affair of an absent person has laid out upon it expenses that are necessary or useful, and such as the absent person himself would and ought to have done, he shall recover them." (Id. 577–8 ; L. 1, 2 D. *de neg. gest ;* see also Dalloz, *verb mandat gratuit ;* Oeuvres de Pothier, 6 tome, 198, 238 ; " *Traite du contrat de mandat.*")

An *administrador voluntario* in Spanish law is, according to Escriche, precisely the same as the *negotiorum gestor* of the Roman law. (Escriche, Dic. de Leg. verbs administrador voluntario, and administracion de bienes ajenos sin orden del Dueno.) Escriche regards the relations between the voluntary agent or administrator of an estate or thing as resulting from a *quasi* contract, and says, that " he who voluntarily takes charge of the property or affairs of another without the authority of the owner, is obliged to render an account, and has the right to be reimbursed or repaid his outlays (desembolzos)."

De Le Guerra *v.* Packard.

" There arises,'" says Escriche, " from this *quasi* contract two
obligations : one upon the *administrador voluntario*, to account for
his administration or *gestion;* and the other upon the owner, to pay
or make good the expenses incurred for his benefit.  The reason
why the law sanctions the first obligation is too evident to require
any explanation.  The reason of the second is the benefit conferred
upon the persons who from absence, infancy, lunacy, sickness, or
any other cause, cannot take care of their own interests."

Again : " It is understood that I do your business, if I act for
any pupil, body, community, or person of whom you are tutor,
guardian, superintendent, attorney, or agent, since I relieve you of
your responsibility by doing a thing which was your duty to do,
and which you neglected or abandoned ; and I have cause of action
not only against you for the recovery of what I have expended, but
also against the owner of the property or business of which I took
charge, rendering to him an account thereof."     *     *     *
"Although the words of the law refer only to the case of absence,
it applies by analogy of motives to all cases where a third spontane-
ously takes charge of the management of the business of another
person, either on account of his infancy, lunacy, or any other
cause."

Again : " The owner of the property or business must repay or
satisfy the spontaneous administrator for all the expenses which he
has incurred by reason of his administration, not only those which
were necessary—as those incurred in cultivating the land, repairing
the house which was going to ruin, or the doctoring of a horse
which was sick, even though the horse should afterwards die, the
house be burned, and the fields desolated by a tempest ; but also
those which were useful, that is, those which were incurred in good
faith to improve the property and increase its rents, whether they
were really beneficial, and only appeared so at first, and were
not in reality ; but an orphan less than fourteen years of age is not
bound to pay the expenses which were not really beneficial, although
they may have appeared so at the time."

Asso y Manuel, in their Institutes of the Civil Law of Spain,
book 2, tit. 2, chap. 2, (White's Recop. vol. 1, 183) say :

" Here belongs also the voluntary attorney, or *negotiorum gestor·*

of the Romans ; that is, one who takes charge of another person's business without the knowledge of the owner.

" Hence arises the axiom : that the owner or principal remains obliged by a consent presumed from the advantage which he derives.

" From this we infer : 1st, That if any one, without an authority or commission, (*mandato*) administers, improves and benefits the property of an absent person, he may recover the expenses from the owner ; to whom he shall be obliged to give a just and perfect account of all that has been done by him. (L. 26 and 31, tit. 12, P. 5.)    2nd, The same is understood of the expenses incurred on the property of a minor, (*huerfano*) except with respect to those which are not permanent, which the minor is not obliged to pay. (L. 28, tit. 12, P. 5.)    3d, That although a person with a bad intention laid out expenses on the property of another, from which it derived benefit, he may retain for them ; but not for those from which no utility resulted to the property. (L. 29, tit. 12, P. 5.)    4th, That the administrator of another's property is obliged to pay the injury (*los prejuicios*) occasioned by his fault or fraud, unless it be, that finding the property entirely abandoned, he was desirous of administering it out of pure compassion. (L. 30, tit. 12, P. 5.)    5th, That whoever intermeddles in the administration of the affairs of another without a commission, (*mandato*) only ought to do that which the principal was accustomed to do ; and acting otherwise, he shall be responsible for the damages which he might occasion." L. 33, tit. 12, P. 5.)

Palacios, in commenting on the foregoing text of Asso y Manuel, says : " That one thus voluntarily acting as tutor of an orphan under fourteen years of age, is entitled to recover whatever has been expended for the advantage of the property of such orphan, but not what has not been beneficial, even though it may at the time have appeared so." (Palacios, 2 tome, 85.)

It therefore appears, that if the position assumed by respondents' testator be, what is claimed by counsel for appellant, that of a *negotiorum gestor* under the Roman law, or of an *administrador voluntario* under the Mexican law, he is unquestionably entitled to recover the money expended, as in this case, for the benefit of the

estate—doing what the owner ought to have done had he acted for himself.

And we do not deny that his position was, in some respects, that which counsel have attributed to him, or claimed that he occupied towards this estate and the heirs.    Being infants, they were in law to be regarded as absent persons.    But we think the circumstances of this case make the claim for reimbursement of actual and beneficial advances still stronger than that of a mere naked *negotiorum gestor.*

The Spanish law requires that every male orphan under fourteen years of age, and every female orphan under twelve, shall have a tutor. (Schmidt's Civil Law, art. 108 ; Partidas, 1. 1, t. 16, P. 6.) When the father dies without appointing a tutor by last will for such minor children, the law appoints them from among their relations, in the following order, viz: 1st, the mother ; 2d, &c. (Schmidt, arts. 119 and 121 ; Partidas, 1. 9, t. 16, P. 6.)    " He who wishes to exempt himself from accepting the tutorship must prove before the Judge that he is entitled to such exemption. Until he has done so, he is regarded as the tutor, and he is responsible as such.    (Schmidt, arts. 144, 145.)

It thus appears that upon the death of Lataillade, his widow became by act of law the tutor of his infant heirs, and that the duty of making inventory, &c., devolved upon her.    Whether she did so is not shown by the record.    Nevertheless, by that law the mother became the legal guardian or tutor of her infant children.    But her father, as the natural protector of herself and her infant children, with whom she and they lived, and by whom she and they were supported, who, " being in possession of the commercial books, papers and accounts of the said Lataillade, undertook to settle the estate of said Lataillade, and in the course thereof he received moneys belonging to the estate, and paid out moneys in the discharge of debts due from the estate ; " and the excess of his payments " for indebtedness of the estate of said Lataillade," over and above the receipts, was the sum for which judgment was given in the Court below.

What are the presumptions which arise from this state of facts ? Unquestionably, that the respondents' testator acted as the agent of

these minor heirs, with the knowledge and at the request of the guardian and tutor whom the law had given them; and that the money so advanced by him, was money had and received by said estate for its advantage and benefit; and he is as much entitled to recover for it as he would have been for money or labor expended in repairing a fence or a house belonging to said estate.

It is suggested that the presumption of *animus donandi* arises in this case to prevent recovery. A reference to the authorities on this subject, especially Escriche and Pothier, will show that no such presumption can arise in expenses and advances of this character.

Again, it is urged that this claim should properly be made against the heirs of Lataillade, and not against the administrator. If no change had taken place in the law, such would have been the remedy; for there would have been no administration and no administrator, in the sense in which these words are used in our statutes. The heirs would then have represented the estate. But now it is represented by the administrator. It may be doubted whether, under our statutes, any such administration could have been legally made. But the question does not arise here. The administrator does not set up the illegality or nullity of his own appointment. He represents the estate upon which he has administered; and so far as the assets in his hands will go, he is bound to pay its debts, no matter whether such debts were incurred by the intestate or by others for its care and preservation after his death. (Wood's Dig. art. 2277.) In what order this judgment is to be paid by the administrator, under what head he is to return such payment to the Probate Court on the settlement of his accounts, are questions which have nothing to do with this case.

Again, it may be urged that, even admitting that respondents are entitled to recover what their testator expended prior to the Statute of 1850 regulating the estates of deceased persons, his acts subsequent to that time must be regarded as those of an *executor de son tort*. We think the statute changed in no respect the position which De la Guerra had previously assumed; if it was previously that of an agent of the legal tutor, or a *negotiorum gestor* of the infant heirs, all his acts being of the same character and a continuation of the same business, must be governed by the same

De Le Guerra *v.* Packard.

principle of law.   If he was entitled to recover a part, he was entitled to recover the whole of his expenses, if incurred in good faith and for the benefit of the estate.

*Heydenfeldt,* also for Respondents.

The appellant resists the relief sought, on the ground that the acts of respondents' testator made him *executor de son tort* of Lataillade.

This position does not necessarily conflict with the right to relief. The position of *executor de son tort* renders the party liable to the extent of the assets he has received, but no farther.   (1 Williams on Ex'rs. 218.)   He is protected in all his acts, which are not for his own benefit.   (Id. ; 4 Bac. Abr. Ex'rs. B. 31.)   And after action brought against him, he may go on and pay debts and plead the payments in bar to the action.   (Id. 219.)

And so even where trover is brought by the rightful administrator, he may plead his payment in recoupment of damages.   (Id. 221.)   So sales of intestate property and all other lawful acts are good.   (Id. 223 ; *Hostler's admr.* v. *Scull,* 2 Hayw. 179.)

In *Ayre* v. *Ayre,* Cases in Chancery, 33, the principle is laid down that an executor in his own wrong shall be allowed all payments made to any but himself.   And in the case of *Hele* v. *Stowell* (Id. 126) the *executor de son tort* was allowed payments of legacies which she had made.

And there is a marked difference between one who pursues a due course of administration, and another who commits a solitary act of wrong.   (*Mountford* v. *Gibson,* 4 East. 446.)

And it is not material to inquire if the estate is solvent, when that question was not raised in the Court below.   (*Glenn* v. *Smith,* 2 Gill & Johns. 512.)

But furthermore, it appears that Lataillade died in April, 1849, when the Mexican laws were in full force, and more than a year before their repeal.   Now under the Mexican system there was no such thing as the administration of an estate *ab intestato,* but an inventory was produced by the parties interested before the Judge, and he made distribution of the estate.   (1 White New Recopilacion, Frt. 4, 111 ; 4 Novissima Recop. lib. 10, tit. 20, leg. 14.)

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

There is nothing in this case, so far as it is governed by the rules of the common law, to distinguish it from the ordinary case of an executor *de son tort.* Such an executor is regarded by the common law as an intermeddler and a wrong-doer. He has no rights, and payments made by him over and above the value of the assets which come into his hands are entirely voluntary. He cannot by such payments place himself in the position of a creditor of the estate. We are not called upon to determine how far the common law rules upon this subject have been changed by the provisions of our statute. There is no doubt that at common law the acts of an executor *de son tort* are for some purposes regarded as valid, but it is a familiar principle that no benefit can be derived from such acts by the executor himself. " The law," says the Supreme Court of North Carolina, " holds such an executor to many liabilities, but gives him no action." (*Francis* v. *Welch*, 11 Ired. 215.) He cannot retain for a debt of his own, and if the estate be insolvent, it is no answer to an action to recover the assets that he has paid debts equal to or exceeding their value. In *Ayre* v. *Ayre* (cases in Chan. 33) it was said that such an executor should be allowed all payments not made to himself, but this language must be understood as referring to the facts of that case. The suit was brought by a widow to recover the amount of certain debts due from the estate of her husband. She had possessed herself of the estate and paid these debts, but the estate had been taken out of her hands, and no allowance had been made for such payments. It is evident that nothing more was intended than to lay down a rule as applicable to these facts ; and the case is far from maintaining the proposition that an executor *de son tort* may charge the estate beyond the assets in his possession. A similar question was presented in *Hardy* v. *Thomas* (23 Miss. 544). In that case the executor *de son tort* had paid several debts, but had not parted with the assets. The suit was by the rightful executor for their recovery, and the Court held that under a statute of that State the executor *de son tort* could make no valid disposition of them, and that the

De Le Guerra *v.* Packard.

plaintiff was therefore entitled to recover.   Upon the subject of the right of the defendant to a claim upon the estate for the amount of these debts, the Court declared the law to be that he was entitled to satisfaction ratably with other creditors.   But the case shows that the reference upon this point was only to such debts as were paid upon the faith of the assets which came into his hands, and there is no reason to suppose that if he had been permitted to retain these assets, any claim on his part would have been regarded as valid.

This case, and the case of *Ayre* v. *Ayre,* are the only cases we have been able to find in which the right of an executor *de son tort* to maintain an action against the estate which he professes to represent is recognized.   As we understand these cases, the doctrine enunciated is no doubt correct, but it is the part of policy to keep the rule extremely strict, and prevent, as far as possible, all unlawful and improper intermeddling with the estates of deceased persons.   This has always been the policy of the common law, and we are not disposed at this late day to establish a rule which could only be regarded as a departure from the uniform course of English and American adjudications upon this subject.

Our conclusion is, that by the rules of the common law, the plaintiffs are not entitled to recover, and we are satisfied that whatever may be their rights under the laws and jurisprudence of Mexico, they have mistaken their remedy.   Under the Mexican system their testator stood in the position of a voluntary agent, and represented the persons of the heirs, and not the estate.   The heirs succeeded immediately to the estate, and became personally responsible for the debts of the deceased.   The disbursements in payment of these debts were on behalf of the heirs and in discharge of their personal liability.   If any claim exist for the amount of these disbursements, it is against the heirs and not against the estate.   Indeed, in our view of the rights and liabilities of the heirs under the Mexican system, we do not see upon what principle the estate was subjected to administration under our statute, and we are inclined to the opinion that whatever has been done in this respect must be regarded as unauthorized and illegal.

Judgment reversed and cause remanded, with instructions to the Court below to dismiss the action.

BALDWIN, J.—I concur in the foregoing opinion and in the judgment. Upon Lataillade's death, by the Spanish law his heirs took the estate left by him, by succession. The title came to them by descent, charged with the debts. There was nothing, therefore, of the estate left by the intestate to be administered after the change of governments, for the administrator, Packard, had no rights in the property of these heirs by virtue of his letters of administration upon the estate of the ancestor. De la Guerra's claim, if otherwise legal, was and is against these heirs, who have thus succeeded to the rights of the deceased Lataillade, and this decision does not prevent him from prosecuting his claim against them in proper form. But he cannot maintain his bill against Packard, who neither represents the heirs nor takes the estate of Lataillade.