[No. 2941.]

FRANCIS W. PATY ET AL. v. J. R. SMITH ET AL.

POWER OF LEGISLATURE OVER ESTATES OF INFANTS.—The Court has grave doubts whether the Legislature has power to authorize or direct the sale, by a stranger, of the real estate of an infant, and whether the matter of the appointment of guardians of infants, and the disposition of their estates, is not exclusively of judicial cognizance, but does not decide the question.

ACT EMPOWERING A PERSON TO SELL LAND OF A MINOR.—An act which authorizes a person by name, as guardian of a minor, to sell the real estate of such minor and receive the purchase-money therefor, and to execute a conveyance after a confirmation of the sale by the Probate Court, and directs such person to account for the proceeds of sale in the same manner as the other assets of the minor in his hands, does not confer upon such person the power of selling such estate as an individual, but in his capacity as guardian, nor does it appoint such person a guardian, but contemplates his appointment as guardian by the Probate Court, and merely dispenses with the conditions required by the general law to authorize a sale.

IDEM.—A sale of the real estate of a minor made by such person upon the presumed authority conferred by such act, without his previous appointment as guardian by the Probate Court in accordance with the general statutes upon that subject, is void.

CONSTRUCTION OF AN ACT.—An act authorizing a person to sell the real estate of an infant will not be construed as freeing such person from the supervision of the Probate Court under the general laws, unless its language clearly and explicitly requires such construction.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

Ejectment to recover an undivided one-fourth of a tract of land in the city and county of San Francisco. William Paty owned the demanded premises, and died intestate, in San Francisco, on the 14th day of February, 1850, leaving, him surviving, Martha Ann Paty, his widow, and three children, Ellen D. Paty, Charles M. Paty, and one of the plaintiffs, Francis W. Paty. Charles M. Paty died in 1857,

unmarried, and without issue. Under the statutes of this State, the plaintiff Francis inherited from his father and deceased brother an undivided one-fourth of the premises. The other plaintiffs claimed under Francis, who was born December 6, 1845. This action was commenced December 3, 1869, so that five years had not elapsed after he attained his majority. Letters of administration upon the estate of William Paty were granted to John H. Gleason and John Paty, on the 23d of February, 1850, and, on the 31st day of July, 1851, Gleason, one of the administrators, petitioned the Probate Court of San Francisco for leave to sell the demanded premises along with other land, to pay the debts of the intestate. Leave was granted, and the sale took place October 4, 1851. The proceedings of the Probate Court were regular, except that one of the administrators, John Paty, did not sign either the petition or the deed. The defendant deraigned title under this sale. The defendant had also purchased the interests of the widow and Ellen D. Paty. On the 6th day of May, 1861, the Legislature passed an act entitled "An Act to authorize the guardian of Francis William Paty to sell certain real estate." The act reads as follows:

"Section 1. Martha Ann Paty Dayley, the mother and guardian of Francis William Paty, a minor, is hereby authorized and empowered to sell, at public or private sale, in her discretion, any or all of the real estate, or interests therein, of the said Francis William Paty, as shall, in her opinion, most promote his interest.

"Sec. 2. On making any such sale, or sales, the said Martha Ann Paty Dayley may convey the property so sold to the purchaser, or purchasers, thereof, and receive the purchase-money therefor; and the title so conveyed shall be valid, and convey all the interests of the said minor in the property so sold.

"Sec. 3. The said Martha Ann Paty Dayley shall account for the proceeds of such sales as for any other assets in her hands pertaining to said minor.

"Sec. 4. No deed or conveyance of the said real estate, or any part thereof, made under the provisions of this act,

shall be valid, or convey any title, unless the sale shall have been confirmed by the Probate Court, previous to the execution of such deed of conveyance."

On the 5th day of November, 1850, Mrs. Paty was appointed guardian of her son Francis, by the Probate Judge of Plymouth County, in the Commonwealth of Massachusetts. She was also appointed guardian of her said son by the Chief Justice of the Hawaiian Islands, on the 27th day of May, 1856. She was not appointed guardian of her said son in this State. Under the foregoing act, the widow, and mother of Francis, sold the interest of the plaintiff Francis in the demanded premises, to the defendant. The court below rendered judgment for the defendant, and the plaintiff appealed from the judgment and from an order denying a new trial.

It will be observed that Mr. Paty died before April 22, 1850, the day on which our probate system was adopted, so that under the decisions of our Court, the Probate Court had no authority to administer on his estate.

*Barstow, Stetson & Houghton,* for the Appellants.

The act under which Mrs. Dayley sold is in conflict with Section 8, Article I, of our State Constitution, which provides that "no person shall be deprived of life, liberty, or property, without due process of law." (Cooley on Con. Lim. 353; Sedgwick on Con. and Stat. Law, 537; Story on Conflict of Laws, Sec. 932; *Taylor* v. *Porter,* 4 Hill, 140; *Hoke* v. *Henderson,* 4 Dev., N. C. 15; Opinion of the Judges, 4 N. H. 572; *Jones* v. *Perry,* 10 Yerg. 59; *Wynehamer* v. *People,* 13 N. Y. 393; *People* v. *Berberrick,* 11 H. P. R. 322; *Westfelt* v. *Grigg,* 12 N. Y. 202; *White* v. *White,* 5 Barb. 481; *Sherman* v. *Buick,* 32 Cal. 241; *Cohen* v. *Wright,* 22 Cal. 293.)

It appears to us that when the Legislature has once acted upon the subject of the sale of the property of minors, providing the mode, which it has done in this State by the Probate Act, that its authority has ceased, and it has no right to interfere in particular cases, and subject the property of a particular minor to a mode of sale differing from the general laws which it has provided for all other persons

of the same class. In the opinion of the Judges (4 N. H. 572), the validity of such a special act, under a Constitution like ours, is denied.

This act is in conflict with Section 11, Article I, of the Constitution of this State, which declares that " all laws of a general nature shall have a uniform operation." (*Holden* v. *James,* 11 Mass. 397; *Webb* v. *Lewis,* 3 Greenl. 326; *Jackson* v. *Shawl,* 29 Cal. 268; *Ex parte Smith & K.,* 38 Cal. 702; *Bank* v. *Cooper,* 2 Yerg. 599; *Walley's Heirs* v. *Kennedy,* 2 Yerg. 554; *Tate* v. *Bell,* 4 Yerg. 202; *Officer* v. *Young,* 5 Yerg. 320; *Teft* v. *Teft,* 3 Mich. 74; *Perry* v. *Jones,* 10 Yerg. 59.)

While it is clearly competent for the Legislature to prescribe general laws effectually providing for the disposition of the property of infants, lunatics, and others unable to act for themselves, for their benefit, yet, when one individual is singled out to be deprived of his property by a statute excepting his property from all the safeguards and protecting regulations prescribed by the general law to be pursued in like cases by courts of justice, having full jurisdiction, such an act is an arbitrary exercise of legislative power, and is an infringement upon the rightful province of the Judiciary. The act of which we complain is a clear usurpation of judicial power. It is substantially a judicial decree made at the instance of Mrs. Martha Ann Paty Dayley, and delegating to her the power to carry it into effect. That the exercise of such a power is in its nature judicial, is too clear to need argument. And here occurs the question, elsewhere discussed, when the Legislature has, by a general law, conceded the power to the courts, has it not divested itself of the right to legislate on that subject? (*Lane* v. *Dovman,* 3 Scam. 242; *Cash, Appellant,* 6 Mich. 193; Cooley on Con. Lim., pp. 104 to 109, and notes; *McDaniell* v. *Correll,* 19 Ill. 226; *Powers et al.* v. *Bergen,* 2 Seld. 358.)

*Daingerfield & Olney,* for the Respondent.

The only plausible objection, to our mind, to the constitutionality of the law is that the passage of the act was not legitimate legislative power; that before such a sale should be ordered there are facts to be inquired into which prop-

erly belong to the judiciary. This question is discussed at length by Judge Cooley in his late work on Constitutional Limitations upon Legislative Power (pp. 97–106), and all the cases are there cited, and the leading ones largely quoted from. The decisions are all one way, unless we except the opinion of the Judges in 4 N. H.

The only other cases referred to by counsel for the plaintiff which seem to us to have any application to the point in discussion, are *Powers* v. *Bergen* (6 N. Y. 358) and *Jones* v. *Perry* (10 Yerg. 59).

In *Powers* v. *Bergen,* cases where the Legislature "acting as the guardian and protector of those who are disabled to act for themselves, by reason of infancy, lunacy, or other like causes," have "passed general or private laws, under which an effectual disposition or sale of their lands and other property may be made in order to promote their interests," are expressly excepted and distinguished from the case in discussion; and the court quotes with approval the decisions sustaining such laws. (See *Leggett* v. *Hunter,* 19 N. Y. 461.)

In *Jones* v. *Perry,* the court goes out of its way to controvert the positions taken in *Rice* v. *Parkman.* But the only thing decided is, that an act of the Legislature directing the real estate of certain minors therein mentioned to be sold by their guardians, and the proceeds to be applied to the payment of their ancestors' debts, is judicial in its character.

"It was enacted upon the avowed ground that the estate of John Jones, deceased, was indebted. What does it do then but adjudge the existence of the debts, and decree that the lands be sold for their payment?"

We think there is a material distinction between such an act and one like the present, where the character only of the property is changed for the benefit of the minor. (See *Watkins* v. *Holman's Lessee,* and *Doe* v. *Douglass,* 8 Blackf. 10).

We think we cannot do better than refer the court to the discussion of the whole question by Judge Cooley, and to the cases there cited. We would desire, however, to call special attention to the following: *Rice* v. *Parkman,* 16 Mass.

326; *Davison* v. *Johonnot*, 7 Met. 388; *Cochran* v. *Van Surley*, 20 Wend. 373; *Stewart* v. *Griffith*, 33 Mo. 13, and cases cited; *Boon* v. *Bowers*, 30 Miss. 246; *McComb* v. *Gilkey*, 29 Miss. 146; *Williamson* v. *Williamson*, 3 S. & M. 715; *Doe* v. *Douglass*, 8 Blackf. 10; *Florentine* v. *Barton*, 2 Wall. 210; *Smith* v. *Judge of Twelfth District*, 17 Cal. 553, 563; *Watkins* v. *Holman's Lessee*, 16 Pet. 62; *Stockton and Visalia R. R. Co.* v. *City of Stockton*, April Term, 1871.

By the Court, McKinstry, J.:

While entertaining grave doubt in respect to the point, we shall assume, for the purposes of this decision, that the Legislature has power to authorize or direct the sale, by a *stranger*, of the real estate of a minor; that the matter of the appointment of guardians of infants, and the disposition of the estates of such, is not exclusively of judicial cognizance, to be referred to a court of appropriate jurisdiction, but is one which may, in any instance, be directly regulated by the legislative department of the government. It is not necessary to determine the constitutional question suggested, because we are convinced that the act, on the construction of which the main point in this case turns, is not an attempt to confer the power of sale on Martha Ann Paty Dayley, as an individual, but to confer upon her the power of making private sales in her capacity as guardian of the estate of the infant, Francis William Paty.

Independently of any question of constitutionality, we would not be justified in saying that it was the intention of the Legislature to authorize an adult who had given, and was required to give no bond or security, to sell the real estate of an infant, and to appropriate the proceeds, freed of the supervision of any court or officer, unless the language conferring that dangerous power should be clear and explicit. We cannot assume such intention upon any ambiguous phraseology. The person named in the act was never appointed guardian in this State; never gave bond to secure the proper application of any fund that might come into her hands; and (if we adopt the construction of the respondent) while the Probate Judge was given power to disapprove of

a sale—that is, to require that a larger sum should be realized and paid to the guardian, so called—he had no power to interfere for the protection of the infant, by directing or supervising the use of the proceeds.

At the time the act under consideration was passed there was a general law providing for the appointment of guardians, requiring bonds, the rendition of accounts, and proof to the satisfaction of the Probate Court of the necessity and propriety of sales, and conferring on the Probate Court or Judge a controlling direction over the property and proceeds. Acts had been passed, however, authorizing particular guardians, duly appointed and qualified, to sell the real estate of their wards, without the formalities or conditions required by the general law. We do not decide whether such special laws are constitutional; we think, however, the Legislature, by the act under consideration, intended to follow these precedents.

This is suggested by the title of the act: "An act to authorize the guardian of Francis William Paty to sell and convey certain real estate." The statute does not purport, in any part of it, to nominate Martha Ann Paty Dayley guardian of the infant: it simply assumes that she is, or—when the sale shall be made—will be the guardian of his estate; exercising the ordinary functions and charged with the ordinary responsibilities of guardians. The power was given to her in her capacity as guardian, and not as an individual; as she failed to secure an appointment as guardian, the attempted sale was void. The act does not purport to appoint her to that office; on the other hand, the word "guardian" is no more than *descriptio personæ*, which might be disregarded. This is seen not only in the title of the act, but also in the language employed in the body of it. Thus, in the third section: "The said Martha Ann Paty Dayley shall account for the proceeds of said sales as for any other assets in her hands pertaining to said minor." This evidently contemplates her appointment as guardian, and her accountability to the Probate Judge for all the estate of the infant, including the proceeds of the special sales authorized by the act. It is the equivalent of a declaration that she

should account for the proceeds of the land in like manner as she would be required by the general law to account for the rest of the estate. And the intention is perhaps made still more apparent by the fourth section, which provides that no sale shall be valid unless confirmed by the Probate Court.

Judgment and order denying new trial reversed, and cause remanded for a new trial.

Mr. Chief Justice WALLACE did not express an opinion.