[No. 8,217.   Department One.—November 19, 1884.]

P. S. McNEIL ET AL., APPELLANTS, v. THE FIRST CONGREGATIONAL SOCIETY OF SAN FRANCISCO, RESPONDENT.

FOREIGN LAWS—CHANGE OF SOVEREIGNTY.—Upon the conquest or cession of foreign territory the laws of the former sovereign will prevail, until they are abolished or supplanted by others enacted by the new sovereign.

MEXICAN LAW—ESTATES OF DECEASED PERSONS—ADMINISTRATION.—The property of a person who died intestate, after the organization of the State government, but before there was any legislation by the State regulating the administration, descent, and distribution of estates of deceased persons, descended in accordance with and was subject to the laws of Mexico as they existed at the time of the cession of California to the United States.

ID.—ESTATE OF INTESTATE—SUCCESSION.—Under the Mexican law, on the death of an intestate, the heirs succeeded immediatly to the estate, and became responsible for the debts of the decedent, and no administration could be had.

Id.—Probate Court—Alcalde Courts.— The Probate Court was never made the successor of courts of first instance, or Alcalde Courts, as to matters pending before them relating to the administration of estates.

Guardian—Minor— Foreign Guardianship.— A guardian of a minor appointed in another State cannot, by virtue of such appointment, convey the real estate of the ward situated in this State.

Partnership—Surviving Partner—Partnership Lands—Conveyance.—A surviving partner cannot convey by deed the title of a deceased partner to his interest in lands belonging to the partnership.

Id.—Bona Fide Purchaser.—One who acquires the legal title to the interest of a decedent in land which had been partnership property of the decedent and another, takes it free from all trusts or equities in favor of the surviving partner, of which the purchaser had no notice at the time of his purchase.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts appear in the opinion of the court.

*Stetson & Houghton*, for Appellants.

*Cope & Boyd*, for Respondents.

McKee, J.—Ejectment, to recover an undivided interest in a portion of fifty-vara lot No. 145, in the city and county of San Francisco.

From the unchallenged findings of the court, it appears that William Paty, on the 13th of November, 1849, acquired title to an undivided interest in the premises in dispute. After his acquisition of title he died, on the 14th of February, 1850, in the city of San Francisco, intestate, and leaving surviving him as his legal heirs, Martha Ann Paty, his widow, and three children, Ellen D., Charles M., and Francis W. Paty. Of these children, Charles M. died in the year 1857, a minor, unmarried and without issue. From Francis W. the plaintiffs claimed to have derived his title to the premises ; and they were, at the commencement of the action, vested with all the right, title and interest in said premises, which the said Francis W. inherited as the heir-at-law of his deceased father and brother. Upon the case made by them they were therefore entitled to judgment for that interest against the defendants in possession, unless the latter showed a superior right to the possession.

Admittedly, the defendants were in possession, and had been, continuously, since the year 1852, by themselves and their grantor, under title to an undivided three-fourths interest in the property, derived from two of the heirs of the said William Paty, deceased.   But they also claimed to have acquired the interest in the property of Francis W., as another of the heirs-at-law of said deceased.   This claim of title is attempted to be derived from four sources.   First—From a decree of confirmation by the Probate Court of San Francisco county of an administrator's sale of the real estate of said deceased, made under an order of said court.   Second—From a deed purporting to convey all the interest of Francis W., as an infant heir-at-law of his deceased father and brother, executed by the mother of said infant, under an Act of the legislature of the State of California, approved May 6th, 1861, entitled " an act to authorize the guardian of Francis W. Paty to sell and convey certain real estate."   Third—From a deed purporting to convey all the premises in dispute, executed on the 28th of February, 1852, by John Paty, who was a brother and surviving partner of William Paty, deceased.   Fourth—From the statute of limitations.

I.  As to the first source: William Paty died February 14th, 1850, after the organization of the State government, and before there was any legislation by the State, regulating the administration, descent and distribution of the estates of persons dying intestate within the State.   His estate, therefore, descended and was subject to the operation of the Mexican law in existence at the time of the cession of California to the United States. As was said in *Ryder* v. *Cohn*, 37 Cal. 87 : " It is a well-known principle, that upon a conquest or cession of a foreign territory, the laws of the former sovereign will prevail, until they are abolished or supplanted by others enacted by the new sovereign."

And the Constitution of 1849 embodied the same principle. Section 1 of the schedule provided, " That * * * all laws in force at the time of the adoption of the Constitution, and not inconsistent therewith, shall continue until altered or repealed by the legislature, as if the same had not been adopted."

No attempt was made to alter or repeal the Mexican law upon the subject of descent and distribution of estates of de-

ceased persons, until April 22, 1850. On that day, the legislature, by an act entitled " an act to regulate the settlement of the estates of deceased persons" (Stats. 1850, p. 377), regulated the subject of descent and distribution, and conferred upon the newly appointed county courts, when sitting for the transaction of probate business, jurisdiction of such estates. About two months before that day, what purported to be letters of administration upon the estate of William Paty, deceased, were granted by John W. Geary, first alcalde and *ex officio* judge of the court of the first instance of the District of San Francisco, to John H. Gleason and John Paty; and those persons claimed to act as administrators of said estates. But in *Coppinger* v. *Rice*, 33 Cal. 408, it was held that under the Mexican law, on the death of an intestate, the heirs succeeded immediately to the estate, and became personally responsible for the debts of the deceased; and that no administration, in the common law sense, was needed, or could be had at any time. By force of the Mexican law, therefore, the estate of the intestate, William Paty, was transmitted to and became vested in his heirs; and it was not subject to administration in the alcalde's court, or court of the first instance, nor to the operation of the probate law subsequently passed by the legislature; the order of the probate court, made after the passage of the act of April 22d, 1850, authorizing the persons appointed by the alcalde as administrators of the estate, to sell the real estate of the intestate, was, therefore, void for want of jurisdiction. That act, as has been determined by a series of decisions, had no application to the estates of persons who died before its passage. (*Grimes* v. *Norris*, 6 Cal. 624; *Tevis* v. *Pitcher*, 10 Cal. 465; *De La Guerra* v. *Packard*, 17 Cal. 193; *Soto* v. *Kroder*, 19 Cal. 97; *Downer* v. *Smith*, 24 Cal. 114; *People* v. *Senter*, 28 Cal. 502; *Wilson* v. *Castro*, 31 Cal. 420; *Coppinger* v. *Rice*, *supra*; *Seaverns* v. *Gerke*, 3 Saw. 363.)

*Ryder* v. *Cohn*, *supra*, is not in conflict with those cases. In that case, the questions of title to the property in controversy in the case arose out of a final judgment founded upon proceedings which were had wholly in the court of the first instance. The estate of the intestate had never been in the probate court. It is true that a majority of the court did hold that the court of

first instance was a *de facto* court, exercising general and un-limited jurisdiction in civil cases, and in matters of administra-tion on the estates of deceased persons, prior to the enactment of a code of laws in this State in 1850; and that the judgments of said courts and titles acquired under them were valid, notwith-standing they might be void if tested by the strict rules of the common law.

Followed, however, to its logical conclusions, that decision would result in establishing the proposition that the court of first instance, before the code of laws enacted in 1850 went into effect, had jurisdiction of the estates of intestates; and that the probate court, subsequently established and organized under the Code of 1850, had not, unless jurisdiction of such estates was conferred upon it by the code. But, although the Constitution of 1849 provided for the removal of all cases pending in tribu-nals under the Mexican law to courts to be created by the leg-islature (§ 2, schedule), no provision was ever made by the leg-islature in carrying out the provisions of the constitution in that regard, for the removal of proceedings in estates pending in the court of first instance to the probate court. The courts of first instance and alcalde courts were suspended by an act passed on the 28th of February, 1850 (Stats. 1850, p. 77), and by the provisions of that act, " all cases and proceedings pending be-fore courts of first instance and alcalde courts " were made transferable to the newly created district courts and justices' courts. But neither in that act, nor in the subsequent act of April 22d, 1850, was there any provision made for the transfer of causes or proceedings pending in those courts to the probate court. The probate court, therefore, acquired no jurisdiction of the estate of William Paty, deceased, although, as a matter of fact, the records and papers in the administration of the estate were sent to and deposited in the probate court.

2. As to the second source from which defendants claim title, the deed executed by the mother of Francis W. Paty, un-der the act of the legislature, was void; because, although she had been appointed guardian of the person of the minor by the probate court of the State of Massachusetts, and by the Su-preme Court of the Hawaiian Islands, she had never been ap-pointed guardian of his person and estate by the probate court

of this State. (*Paty* v. *Smith*, 50 Cal. 153.) And, as the natural guardian of her infant son, the mother had no power to transfer his real property, nor did she derive power for that purpose from the act of the legislature. (*Brenham* v. *Story*, 39 Cal. 179.)

3. As to the third source, the deed from John Paty was ineffectual to transfer the title of Francis W. in the estate of his deceased father; because, although there was, at the time of the acquisition of the title to the property by William, a partnership between him and his brother John, the grantor, under the firm name of J. & W. Paty, in which they recognized each other as equal partners in all their business transactions, and the partnership continued until it was dissolved by the death of William, yet the court finds that the deed was not executed by John in settlement of the affairs of such copartnership, nor for the purposes of a settlement thereof, nor to convey the property in controversy as surviving partner of the firm ; and " that the plaintiffs purchased and acquired the rights of Francis W. in the premises for value, and without notice of any copartnership interest of John Paty in the premises, or of any copartnership claim thereto by any one."

Assuming that John Paty, as the surviving partner of William, had an interest in the land purchased by the latter, it was a mere equity, which was subject to be discharged by a transfer of the legal title to a purchaser for value and without notice. (1 Leading Cases in Equity, White & Tudor, 287 ; *Smith* v. *Yule*, 31 Cal. 180.) And when the plaintiffs acquired the title of Francis Paty, as found by the court, they took it against any equity existing in John Paty as the surviving partner of William, and held it free from all trusts of which they had no notice at the date of their purchase. Therefore, the title acquired by them was not affected by the proceedings in the probate court on the estate of William Paty, deceased, nor by the deed executed by the mother of their grantor, Francis W. Paty, nor by the deed of John Paty, the brother of the intestate (*McNeil* v. *Polk*, 57 Cal. 323) ; and they became tenants in common with the defendants in possession.

4. As to the statute of limitations, the defendants pleaded : " That said plaintiffs ought not to have or maintain this action,

because the alleged cause of action set out in said complaint is barred by the provisions of sections 318, 319, 320, 322 and 343, and sections 1573 and 1806 of the Code of Civil Procedure of the State of California."

Section 1806 prescribes three years next after the termination of the guardianship of a minor for a recovery by the minor or his grantee of real estate sold by the guardian. That section has no application to this case, because there was no guardian, and no sale by a guardian, appointed by a probate court in this State. Section 1573 prescribes three years next after sale of an estate by an executor or administrator, under the provisions of the probate law, for the recovery of the real estate sold; but that section is not applicable, because the premises in controversy were not subject to sale and were not sold under its provisions. (*Harlan* v. *Peck*, 33 Cal. 515.)

The other sections relate to the bar of the statute of limitations of five years. But Francis W. Paty was born on the 6th of December, 1845, and the action in hand was commenced on the 4th of December, 1871. So that under section 328, C. C. P., his right was not barred. Besides, as the plaintiffs and the defendant were tenants in common of the land, the defendants are presumed to have held the possession for the benefit of themselves and the plaintiffs. There is no finding that this possession became adverse to the plaintiffs at any time, until the defendants refused to let the plaintiffs into possession, on their demand made to be let in, just before the commencement of this action.

Upon the findings, the plaintiffs were entitled to judgment.

Judgment reversed and cause remanded, with directions to the court below to enter judgment upon the findings, in favor of the plaintiffs.

Ross, J., and McKinstry, J., concurring.—No sale of the interest of the deceased William Paty in the real estate in question was ever made by order of the court of the first instance, and as the legislature of the State made no provision for the transfer of proceedings relating to the administration of the estates of deceased persons from the courts of first instance to the court of probate, provided for by the Probate Act of April 22, 1850, the probate court under that act acquired no juris-

diction of the estate of the deceased Paty, who died February 14, 1850. (*Grimes* v. *Norris*, 6 Cal. 642 ; *Tevis* v. *Pitcher*, 10 Cal. 465 ; *De La Guerra* v. *Packard*, 17 Cal. 193 ; *Soto* v. *Kroder*, 19 Cal. 97 ; *Downer* v. *Smith*, 24 Cal. 114 ; *People* v. *Senter*, 28 Cal. 502 ; *Wilson* v. *Castro*, 31 Cal. 429 ; *Coppinger* v. *Rice*, 33 Cal. 408 : *Rider* v. *Cohn*, 37 Cal. 69.) Nor did the defendants acquire the title of Francis W. Paty in the premises by any of the other means relied on, and which are stated in the opinion of Mr. Justice McKee.

We concur in the judgment.

Hearing in Bank denied.