## CASTRO v. CASTRO.

The fact that a will was begun on one day and finished several days afterwards, the delay being for the purpose of procuring a competent person to direct the manner of drawing it, *it seems* is no ground for invalidating a will under the Mexican law.

The strictness of the rules of the civil law, requiring five, or at least three witnesses to a will, was relaxed expressly in favor of remote districts.

By the customs of California, under the Mexican rule, which have the force of law, two witnesses were sufficient to a will.

*It seems* that there never was a Probate Court in California, prior to the organization of the State, and that probate of a will was unknown.

A will takes effect on proof of its execution, in the absence of a statute requiring it to be probated.

After twenty years' acquiescence in the terms of a will, an heir should not be allowed to dispute his own acts, or to contest the will on abstract points of law, which had never any force in California.

WRIT OF ERROR to the Probate Court of Contra Costa County.

This was a proceeding instituted by the defendants in error, in August, 1852, to annul the will of Francisco Maria Castro, executed Nov. 3, 1831, shortly before his death, and to set aside and vacate an order of the Probate Court made in 1851, admitting the will to probate. The case was tried before the probate judge sitting as a jury, and judgment entered October 30, 1852, setting aside the order admitting the will to probate. The plaintiffs in error appealed to the District Court of the seventh judicial district, which affirmed the judgment of the Probate Court. Appeal was taken to this Court, and the judgment of the District Court was in March, 1855, reversed, on the ground that the issues of fact made in the Probate Court, should have been sent for trial to the District Court, and also that the District Court had no appellate jurisdiction.

On the application of the plaintiffs in error, an order was granted by the Probate Court August 27th, 1855, vacating the judgment entered October 30th, 1852. On November 27th, 1855, another probate judge being then in office, the Probate Court, on application of the defendants in error, entered an order vacating the order of Aug. 27th, 1855.

The defendants in error moved to dismiss the writ, on the ground that more than three years had elapsed from the entry of the judgment in the Probate Court, before the issuance of the writ of error. The will is dated at the commencement, October 31st, 1831, but in the *testatum* clause it is dated November 3d, 1831. It appears from the evidence, that the caption of the will was written on October 31st, when further writing was suspended, in order to obtain a proper formula for the will, which was obtained, and the will completed and executed November 3d. It was not made on stamped paper, because, as the evidence shows, there was none to be obtained. It was proved that the personal property was distributed among the heirs in conformity with the will, of which the plaintiffs and defendants received their respective portion, and remained upon the land.

The opinion of the Court discloses all the other facts material to the decision.

· *Eugene Musson and H. P. Hepburn,* for Plaintiffs in Error.

The judgment of the Probate Court of Contra Costa County, rendered on the 30th of Oct., 1852, revoking the last will and testament of the late Francisco M. de Castro, is erroneous, because—

Whether clothed with the formality prescribed by Mexican laws or *not,* the said will cannot be set aside; said law never having in fact been used, enforced, or even known among the sparse population of these distant regions, the few intercourses of these people with one another being altogether regulated by customs.

1. Testator not bound to know the law. Escriche, p. 300; Schmidt, p. 2; 2 Feb. Mex., Title 2, chap. 1, sec. 20.

2. Mexican laws were neither known nor used here, and disuse abolishes law. 1 Domat, pp. 83, 115, §§ 9, 50; 1 Cal. R., 498, 500.

Said judgment is erroneous, because the said will *happens,* in fact, to be clothed with all the formalities prescribed by Mexican laws.

1. No law requires that a will should be probated within twenty years; that it had, in fact, been probated within twenty years. 1 Cal., 506–509.

2. Not required by law to be necessarily executed before a notary public; had, in fact, been executed before a sufficient number of witnesses, to wit, three. 2 Feb. Mex., Tit. II., chap. 1, No. 5, La. Code, 1576; 1 Cal. R., pp. 496, 504. Schmidt, p. 214.

3. Not indispensably required to be executed on stamped paper.

4. That said will had, in fact, been dictated by, and read over to the testator, in presence of, and within the hearing of witnesses, and the deposition thereon began and finished without interruption, as prescribed by law. Schmidt, p. 213–'14; 2 Feb. Mex., Tit. 2, chap. 1, No. 13.

Whether wronged or not, the heirs of Castro cannot recover the estate, which they pretend to have been disinherited of.

1. Because deceased disposed of his property among his wife and children, according to the customs of the country.

2. Because the same was accepted by all the parties, and a partition of the same made upwards of five years before the institution of this suit. Schmidt, p. 223, 271–'4; Domat, 145; La. Code, Art. 970–1007; 2 Feb. Tit. II., chap. XI., No. 7; La. Code, 1751–'2, 3506.

*P. Barry* for Defendants in Error.

The opinion of the Court was delivered by Mr. Chief Justice MUR-RAY. Mr. Justice TERRY concurred.

This was a proceeding in the Probate Court to set aside and annul a will. The testator died in 1831; the personal property was divided under the provisions of the will, and the heirs remained on the land, and acquiesced in it until some time in 1852, a period of over twenty years.

Upon the motion to dismiss, which has been made, it is only necessary to say that this is the second time this case has been before us, and the time which it has been suspended on appeal is not to be computed; in other words the appeal prevents the running of the statute.

By the civil law, wills are divided into solemn and privileged; the solemn will is divided into the nuncupative or open will, and the sealed or written will. The privileged will corresponds with what is known with us as the nuncupative will. The will in question belongs to what was known at common law as the nuncupative will, because formerly published *viva voce;* and although the custom of publication has long since ceased, it still retains the name, between which and the solemn will there is no difference in modern times, except that the latter is sealed up and the attestation made on the back of the instrument.

Among the Romans, wills, or the mode of conveying property by testament, were known even before the art of letters, and therefore much strictness was required in authenticating them; but the reason ceasing, the rigor of the rule has since been relaxed in the various countries which have adopted the civil law as the basis of their jurisprudence. Many objections have been urged against the validity of the will in question, only two of which I shall consider, as I am of opinion that the whole question has been fully settled by this Court in the case of Panaud *v.* Jones, 1 Cal., 488.

*First.* It is contended that the making of the will was not a continuous act, as required by the provisions of the Mexican law; it appears upon the face of the instrument that it was begun on a certain day and finished several days afterwards, and this objection is satisfactorily explained by the testimony of one of the subscribing witnesses, who testifies that he drew the document in question and that after he had commenced writing the same, supposing that some formula was necessary, the further writing was suspended until a competent person could be sent for, who could give the proper directions as to the form and words. It may be that this would vitiate the instrument, but why it should, or on what ground an instrument commenced, and its execution suspended for such purpose, can be invalidated, our ignorance of Mexican law prevents us from determining.

*Second.* As to the number of witnesses required. By the provisions of the Mexican law on this subject, the will may be executed before a notary public and three witnesses; if a notary cannot be had, before five witnesses; and if five witnesses cannot be had, three will be sufficient.

The pleadings in this case admit that there were three legal witnesses, although it appeared upon the trial that one of them was incompetent. This is immaterial, as it is shown from the testimony of various witnesses that two were sufficient under the customs existing in California. That such customs may be proved, and that when proved they have the force of the law, has been fully settled by the decisions of this Court in the case of Van Schmidt *v.* Huntington, 1 Cal. Rep., 56, in which it was held that under the Mexican law, custom is some-

times allowed to control, limit, and modify, the general rules of the system, and even to establish a rule in direct contravention of positive law, and to obtain the force of law, as well where there is no law, as to overturn previous law which stands in opposition to it. The same rule was adopted by the Court in the case of Panaud v. Jones, before referred to, in which Mr. Justice Bennett, in delivering the opinion, makes use of this language: "The custom with regard to the execution of wills, so far as the testimony goes, appears to have prevailed generally, and for a long time, in California. It may have been the universal practice from the first settlement of the country, and I do not feel called on to overturn all titles in this State, which may depend on similar wills, because, the edicts of Justinian or the laws of Toro, had not been known and strictly followed by the simple and uneducated Californians."

In fact, the rigor of the rule has been relaxed expressly to meet the condition of the Indians, shepherds and persons living in rural districts, and remote and sparsely populated parts of the country. Domat, § 2983, and 2 Febrero Mejicano, § 20.

A will is regarded by the Courts of England and the United States as a conveyance, and takes effect as a deed, on proof of its execution, unless there be some express statute requiring it to be probated. It does not appear that there ever was a Court of probate in this country, and from what we have been able to gather from our limited sources of information on this subject, such a proceeding was unknown to the laws and customs of California. Under this view of the case, the plaintiffs became immediately entitled to their respective portions of the land under the demise, and their subsequent conduct, in remaining upon it, and dividing the personal property in conformity with the provisions of the will, would seem to be a ratification upon their part. After twenty years acquiescence they ought not to be allowed to come in and dispute their own acts or impeach the validity of their ancestor's will upon abstract points of law, which are shown never to have been in force in California.

Judgment reversed.