## ADAMS, (CHILD v.)

[See Child v. Adams, Case No. 2,673.]

---

## ADAMS, (CODRINGTON v.)

[See Codrington v. Adams, Case No. 2.937.]

---

## ADAMS, (COTTRELL v.)

[See Cottrell v. Adams, Case No. 3,272.]

---

## Case No. 51.

### ADAMS v. DE COOK et al.

[McAll. 253.][1]

Circuit Court, D. California. Jan. Term, 1858.[2]

COURTS — PROBATE JURISDICTION — WILL BEFORE PROBATE—EVIDENCE.

1. In England, the validity of a will of real estate is exclusively within the jurisdiction of the ecclesiastical [common-law] courts. Such is the rule in such of the states of the Union where the distinction between wills of realty and personalty prevails.

2. Under the probate laws of California, no such distinction exists.

3. General rule, that a party cannot give in evidence and claim title under an unprobated will in the ordinary judicial tribunals, cannot be applied to this case, upon the ground, "lex non cogit ad impossibilia."

4. The act of the legislature of this state in relation to probate of wills, has been declared, by the supreme court of this state, not to apply to a will executed in California prior to the passing of the act.

5. There is reason to believe that in the most remote provinces of the Spanish government, there was some interposition of judicial authority necessary to authenticate the execution of a will, although there may have been no special tribunal like the probate court.

6. The will before probate is not a nullity, is the foundation of title; and under the circumstances of this case evidence may be received to prove the execution of it.

[Cited in Brooks v. McComb, 38 Fed. Rep. 320.]

[7. A custom authorizing the execution of wills in the presence of two witnesses, existing in California under the Mexican government, and prevailing for such time and so uniform and notorious that the assent of the authorities might fairly be presumed, operated as a repeal of the previously existing law requiring three witnesses.]

[8. Where an attesting witness and the testator were ignorant of the language in which the will was written, so that neither could understand the disposition of property made by it, and no interpretation of it was made to them, such witness cannot be considered competent.]

[9. Declarations of a testator which are merely general, and may comport with the existence of any will other than that in controversy, are not competent to prove the execution of such disputed will.]

[10. A codicil, executed in California while it was under the Mexican government, was attested by one R. as "syndic." The office of syndic was merely ministerial, and conferred no authority to authenticate the codicil. *Held*, that such official description might be disregarded, and R. be considered as one of the witnesses.]

At law. This was an action of ejectment. The plaintiff having closed, the defendant offered as the foundation of his title a document purporting to be the will of Eliab Grimes, who died on the 7th day of November, 1848, and proffered to prove the execution of the same. This document and the proof offered were objected to, on the ground that it had not been proved as a will before any judicial tribunal or functionary, and being unprobated it and the evidence offered to sustain it were inadmissible as evidence.

[Judgment for defendant was affirmed, on appeal to the supreme court, under the title of Adams v. Norris, 23 How. (64 U. S.) 353.]

Hall McAllister and E. M. Gould, for plaintiff.

Crockett & Crittenden, for defendants.

McALLISTER, Circuit Judge. In England the validity of a will of real estate is a question exclusively for the adjudication of the common-law courts; and such is the case in some of the states of the Union, where the distinction exists which prevails in that country between the probate of wills of real estate and personalty. In this state, where the general power of proving all wills is vested in a special jurisdiction known as the probate court, the jurisdiction of that tribunal is as conclusive in regard to the probate of wills of real and personal estate, as is that of the ecclesiastical courts in England in relation to wills of personalty. If, therefore, there had been a probate of this document as a will by the appropriate tribunal in this state, such action if final would have been conclusive. As a general rule, a party cannot give in evidence and claim title under an unprobated will in the ordinary courts; and under that rule, this document must be rejected as evidence. But under the peculiar circumstances of this case, that rule cannot be applied, and we must resort to the maxim, "Lex non cogit ad impossibilia." It is true this document never has been admitted to

[1][Reported by Cutler McAllister, Esq.]

[2][Affirmed in Adams v. Norris, 23 How. (64 U. S.) 353.]

probate, and under the rulings of the supreme court of this state it could not be. Professing on its face to be a will, if executed it was so prior to the passing of the act of the legislature regulating the probate of wills; and the supreme court of this state have decided, that the statute does not apply to wills executed prior to its passing.

"Not only (they say) does the statute fail to require wills executed before its passage to be probated; but on examination of the different sections of it, we are forced to the conclusion that this was not a causus omissus, and that the legislature actually intended to exclude them from the operation of the statute, leaving their validity to rest upon the laws under which they were made." This exposition of the statute by the highest judicial tribunal in this state, is conclusive on the point.

The next inquiry is, whether the fact that the document offered to be proved, has never been probated under the Mexican law, which existed at the time when it was made, invalidates it to such an extent as to deprive defendants of the right now to prove its execution before this court?

The supreme court in this state, in the case of Castro v. Castro, 6 Cal. 158, say: "It does not appear that there ever was a court of probate in this country; and from what we have been able to gather from our limited sources of information on this subject, such a proceeding was unknown to the laws and customs of California." If, by these expressions, the court intend to convey simply the idea that no such special tribunal as a court of probate existed in California, as would exclude the jurisdiction of another tribunal, in relation to wills, we concur in their conclusion. But there is reason to believe that, in the most remote provinces under the Spanish government, there was some interposition of judicial authority necessary to secure, in an authentic form, the proper execution of wills.

In the case of Panaud v. Jones, 1 Cal. 488, in the supreme court of this state, where the validity of a will was sustained, it had been dictated by the testator, and the act was stated to have been done in the presence of the judge, and the whole signed by that functionary, who certified he was present and gives faith he knew the testator, who, to appearance, was of sound mind, and, in testimony thereof, he signed the document. As early as 1792, in Louisiana, we find a will proved before an alcalde, after the death of the testator; proof of execution was made to the alcalde, who made a decree which was in effect a probate of the will. The supreme court of the United States so treated it. They say: "That question is closed by the decree of the alcalde; that decree declares the will to be valid and subsisting, and decrees its execution. We are obliged to treat this decree as the judicial order of a court of competent jurisdiction. In fact, it was the only judicial authority in the province of Louisiana, except the governor." Fouvergne v. City of New Orleans, 18 How. [59 U. S.] 471. Now, it is an historical fact, that there were alcaldes and justices of the peace in California. The paper offered in evidence alludes to their existence, and to the absence of two alcaldes at the time of its execution, as a reason for their non-attendance. We think that, although there may have been no probate court, or special tribunal, analogous to that known to us, still, that neither in California, nor in any country where the civil law obtained, there was not some connection between the judicial authority and the execution of wills.

This will being unprobated under the laws of this state, for the reasons heretofore stated, and not having been proved before any judicial authority under the Mexican law existing at the time it was executed, the inquiry is, how is it to be considered by this court? The only reason assigned for the repudiation of all jurisdiction of the probate of wills, by the ordinary tribunals of justice is, that exclusive jurisdiction over them is given to the probate courts by statute. We are unable to detect in the civil jurisprudence the delegation of exclusive jurisdiction over the probate of wills, to one tribunal, to the exclusion of all others; nor can we find any time within which the will is invalidated if not proved. There is a requisition under the Mexican law, that a publication of a will shall be made by a representation to a judge, within one month after the date of the testator's death. But suppose this requisition to be applicable to both kinds of wills known to the Mexican law, "secret and open," the failure to prove the will does not avoid it under that law. The provision of the law requiring the publication within a limited time, seems to have for its object to stimulate the executor to prompt action in the proof of the will; for the only penalty prescribed, is the forfeiture of the legacy or bequest left to him by the will, and in case there be none, he is liable for the damages incurred by his neglect.

What, under the common law, is the position of a party claiming under an unprobated will? It certainly conveys an interest to him, which he should be permitted to vindicate.

In Ex parte Fuller, [Case No. 5,147,] the learned judge asks, in referring to the Revised Statutes of Maine, "Do they make any alteration in the operation of the common law, as to probate of wills?" The 25th section of one of the statutes of Maine declared: "No will shall be effectual to pass real or personal estate, unless it shall have been proved and allowed in the probate court; and the probate of such will shall be conclusive as to the due execution thereof."

Judge Story comments upon that legislation: "The argument is (he says) that under this clause the will is a mere nullity before

probate, that the probate gives it life and effect from that time, and not retroactively. It appears to me that this section is merely affirmative of the law as it antecedently stood." "The will before probate is in no just juridical sense a nullity." "The will must still be the foundation of the whole title,—inchoate and imperfect if you please, until its validity is ascertained by the probate,—but still, a will and not a nullity." "The probate ascertains nothing but the original validity of the will as such. The act of the testator gives it life, his death consummated the title derivatively from himself; and the probate only ascertains that the instrument in fact is what it purports on its face to be. It might as well be said, that a will of real estate at the common law, is a nullity until a jury has ascertained its validity, whereas the verdict ascertains only the fact that the title under the will is perfect; because it was executed by a competent testator, and therefore took effect by relation from the death of the testator."

The foundation, then, of a title in the devisee is the will; the probate of it is but the authentic means which the law provides for the ascertainment of the facts which prove its validity. Under our law, the exclusive power is given to a special jurisdiction to perpetuate those facts, whose final action is conclusive on all other tribunals. This statutory reason for the exclusive jurisdiction of the probate court operates to so great extent that in the case of Gaines v. Chew, 2 How. [43 U. S.] 645, it is said, "that in cases of fraud, equity has a concurrent jurisdiction with a court of law; but in regard to a will charged to have been obtained by fraud, this rule does not hold. It may be difficult to assign any very satisfactory reason for this exception; that exclusive jurisdiction over the probate of wills is vested in another tribunal, is the only one that can be given." That the will is the foundation of the whole title of the devisee—that the will is in no just judicial sense a nullity—that its existence is owing to the living act, and the death, of the testator—that the acts of legislation which provide for their probate, are acts not of creation but merely of evidence,—are not to be doubted. This document could not, nor can be, admitted to probate in this state under our law; it cannot be proved by any Mexican functionary in this state, for none such exists.

The complainant, therefore, is remediless unless proof of the execution of this document, now offered, is admitted. He should have that right. In the case of Bagwell v. Elliott, 2 Rand. [Va.] 195, 198, 199, a kindred point was discussed. That court, after deciding that the act of the legislature of Virginia had vested in the probate court of that state jurisdiction generally over the probate of wills of real and personal estate, and made its action conclusive proof of their validity, say—

"But it does not follow from the fact that it was necessary either to the validity of the will of a real or personal estate, or that no other proof was admissible as to a will of lands."

"Nor does the recognition of an authority to compel the production of the will, or the direction that the original will shall remain amongst the records, lead to the inference, that a probate was necessary to the validity of a will of lands."

Again, they say: "The various acts on the subject being made only to provide a tribunal for granting probates in this country as a substitute for the ecclesiastical courts in England, a probate was not necessary here but for the purpose for which it was necessary there, to wit, to enable the executor to sue; and that for all other purposes without probate in England the will was valid; and so the acts of the legislature, making the probate of the will conclusive as to lands, but without requiring such probate as a prerequisite to the validity of the will as to lands, left it, if not proved, to the court of probate, to have the same effect as if the acts had not been passed; that is, that the effect given to the probate of the will, which was given for the benefit of those claiming under it, no longer existed. If the effect of the acts of the legislature was to declare the will invalid if not proved in a court of probate, then those acts, in many cases, would have been prejudicial to those claiming under the will."

"The only effect of the probate is to afford one mode of proof that the will is genuine; 'but the mode of proof allowable before these statutes, is not abolished by them,—that is, by evidence on the trial. If a will had been offered for probate and rejected, this might be used thereafter as the decision of a competent tribunal, and would condemn it forever." If it be admitted that the law which prevailed in California when the will offered in evidence was executed, prescribed a proceeding for the proof of wills, such proof could constitute no more than a probate under our law would; unless some law of Mexico had declared them void without such proof, of the existence of which this court is not apprised.

After the fullest consideration the court has been able to give this question, it is [has] arrived at the conclusion, that the evidence offered is admissible, and that the complainant may submit, under the instructions of the court, the evidence on which he relies to prove the execution of the document offered as the will of Eliab Grimes.

The evidence objected to having been submitted to the jury, which, with the other testimony, occupied several days, the following instructions were given to the jury:

1. A will executed under the Mexican government, as the one in controversy was, in the presence of only two witnesses, was invalid; but under the decision of the su-

preme court of this state, desirous to conform to the decisions of the highest state court in relation to the law which regulates the transfer of real estate within the limits of the state, I instruct you, if you shall be satisfied from the testimony that a usage or custom had prevailed in California uninterruptedly for the space of ten years, so uniform and notorious that it may fairly be presumed to have received the tacit consent of the country, which authorized the execution of wills in the presence of two witnesses only, the clear proof of the existence of such usage will. operate a repeal of the previous existing law, and two witnesses will be sufficient. If such proof has not been afforded, and if three competent witnesses have not attested the codicil "C," given in evidence in this case, it is a nullity.

2. The witnesses (whether two or three) must be competent. Should you be satisfied from the proofs that the said codicil "C" was written in Spanish, that any of the attesting witnesses was ignorant of that language, that he could neither read nor speak it, that the testator was unacquainted with it, and could not understand it when read, or that neither he nor one of them could understand the disposition of the property made by the will, and no sworn interpretation of the will was made to them, then I instruct you that such witness or witnesses cannot be considered as competent.

3. The signature of each and every witness, and of the testator, must be satisfactorily established. The proof of one or any number less than the whole, will only prove that, so far as each of them is concerned, it is well executed; but will not tend to establish the document as a will.

4. In relation to the verbal declarations of the testator, they cannot be considered as competent to prove the execution of the will. They are general declarations, the truth of which comport with the existence of any will other than that in controversy. These declarations, made under the circumstances, are proof simply of the existence of a will.

5. If the signature of each and every witness of the number sufficient be proved, and the signature of the testator, then I instruct you the satisfactory proofs of those facts afford evidence from which you may presume a due execution of the codicil ("C"), in the absence of what you may deem counteracting testimony.

6. That this presumption is sometimes termed "an intendment," at others "an inference," it is in fact only "prima-facie" proof, and exists only so long as there is no evidence to counteract it. If, therefore, it has been proved to your satisfaction that the codicil ("C") was written in the Spanish language, that on its face it professes to be executed before Mexican functionaries, which it was not, that one or more of the witnesses did not "speak" or "read" the Spanish language, that the testator was equally ignorant of it, that no other proof than the legal presumption to which I have alluded has been given to show a communication of the contents of the will had been made between the testator and the witnesses,—then I instruct you, if these facts have been proved, they must be duly considered by you; and if, in view of all the other testimony, they counteract the presumption arising out of the proof of the signatures of the testator and witnesses,—in that case, the legal presumption will be rebutted. To conclude, if the facts in this case induce you to believe, that if the attesting witnesses were alive and present, they could not testify to the dictation or nuncupation of his will by the testator to the witnesses, or that it was read in his and their presence, and understood by them,—then I instruct you, the proof made at this trial of the signatures to the document ("C") cannot establish it as the last will of Eliab Grimes. On the contrary, if the facts of the case do not thus influence you, the presumption to which I have alluded must control your action.

7. The codicil ("C") is attested by one Robert T. Ridley, as syndic; such office under the Mexican government, being a mere ministerial office without judicial functions, gave him no authority to authenticate the codicil. His act as an official act was void; but he signed with the declared intention to testify to the contents of the will; and his official prefix may be disregarded, and he considered as one of the witnesses.

The jury returned a verdict for the defendants.

[NOTE. This case was heard in the supreme court on writ of error, and the judgment was affirmed, Mr. Justice Campbell delivering the opinion. It was held that the admission of evidence showing a custom in early California as to the manner of making wills was proper, for the reason that the acts of individuals in accordance with such custom were legitimate, if it was so prevailing and notorious that, according to the principles of Spanish jurisprudence in force in California at the time, the assent of the authorities to such custom could be presumed. The will was held valid, although it did not show on its face that the witnesses were present during the whole time of its execution, and heard and understood the dispositions it contained, since the observance of necessary formalities might be shown by testimony dehors the instrument. Adams v. Norris, 23 How. (64 U. S.) 353.]

ADAMS, (DICKINSON v.)

[See Dickinson v. Adams, Case No. 3,896.]