[No. 409.   July 24, 1891.]

CHARLES H. GILDERSLEEVE, PLAINTIFF IN
ERROR, v. THE NEW MEXICO MINING COM-
PANY ET AL., DEFENDANTS IN ERROR.

MEXICAN GRANT—ADVERSE POSSESSION—LIMITATION.—In a suit for the
possession of land granted by the Mexican government prior to the
cession, and claimed by plaintiff under a title derived through the
collateral heirs of the original grantee, who it was alleged had died
intestate in 1848, where neither the plaintiff nor any of those through
whom he claimed had ever been in possession of the land since that
time, and defendant had maintained an open, adverse, continuous

possession of the same under claim of title in fee to the whole thereof through the grant and act of confirmation, for more than ten years before the bringing of the action, such possession was a bar to plaintiff's right of recovery, under section 1880, Compiled Laws, 1884.

ID.—WILL—ATTESTATION—VALIDITY.—A written will executed before an alcalde or judge of the first instance, and attested by two witnesses, in New Mexico, while a part of the government of Mexico, according to a custom which had obtained for at least one hundred years and been recognized as having the force of law, though not in accordance with the Mexican law requiring such wills to be executed before a notary and attested by seven witnesses, is valid ex necessitate rei; the Mexican government never having provided the dependency of New Mexico with such an officer before whom wills could be executed according to law.

ERROR, from a judgment in favor of defendants, to the First Judicial District Court, Santa Fe county. Judgment affirmed.

The facts are stated in the opinion of the court.

H. L. WARREN, THOMAS SMITH, GEO. C. PRESTON, and E. A. FISKE for plaintiff in error.

W. T. THORNTON and E. L. BARTLETT for defendants in error.

All of the customs, usages, and laws of Mexico which were in existence at the time of the treaty of cession, and which were not contrary to the spirit of our government, continued and remained in force. Leitensdorfer v. Webb, 20 How. (U. S.) 177.

In this instance they were so continued by express statute.   Kearney's Code, sec. 1, p. 84, Comp. Laws, N. M.

The will in question was written by the alcalde and attested by him and two others, which, according to Velarde, was sufficient, in the absence of a notary and five resident witnesses, who could not be had.   Law 1, tit. 18, book 10, Novissima Recopilacion.

The will was over thirty years of age, and like all ancient documents proves itself. 1 Greenleaf, sec. 21.

The testator was a soldier, enjoying the benefit of the Fuero Militar, and it was not required that his will should be in any particular form; it was sufficient to show it was his will. Schmidt's Civil Laws of Spain and Mexico, p. 218, art. 1029.

A will executed prior to the American occupation according to a custom then in existence, by which it might be executed in the presence of an alcalde or judge of the first instance, before two attesting witnesses where no notary could be had, is binding. Adams v. Norris, 23 How. (U. S.) 353, 363, 365; Panaud v. Jones, 1 Cal. 497, 505; Von Schmidt v. Huntington, 1 Cal. 55; Castro v. Castro, 6 Id. 158; Lewis v. Pitcher, 10 Id. 465; Pino v. Hatch, 1 N. M. 130.

"A person who enters into possession of land under a conveyance, although from a person having no title, is presumed to enter according to the description of the deed; and his occupancy of a part, claiming the whole, is construed as a possession of the entire tract." Coleman v. Billing, 89 Ill. 183; Cruse v. Wilson, 79 Ill. 233; Hamilton v. Bag, 63 Mo. 233: Mason v. Ayers, 73 Ill. 121; McCarny v. Higdon, 50 Ga. 629; Nowlon v. Reynolds, 25 Gratt. 137; Barney v. Sutton, 2 Watts (Penn.), 37; Johnson v. McIntosh, 8 Wheat. (U. S.) 571; Jackson v. Peter, U. S. Cir. Ct. 467; Thompson v. Gothen, 9 Ohio, 170; Jackson v. Hudson, 3 Johns. (N. Y.) 384; Cook v. Dodson, 1 Tenn. 268; Edgerton v. Bird, 6 Wis. 527; Van Cleve v. Milligan, 13 Ind. 105; Kilpatrick v. Siseros, 23 Tex. 113; Ware v. Johnson, 55 Mo. 300; Wilbourne v. Anderson, 37 Miss. 155; Bynum v. Thompson, 3 Ired. (N. C.) 578; Kyle v. Tubbs, 23 Cal. 431.

As to what constitutes adverse possession, see Wood on Lim., 503, 519, 520; Andrews v. Mulford, 1

Hayw. (N. C.) 311; McCarty v. Fancher, 12 Martin (La.), 300; Prevost v. Johnson, 9 Id. 123; Sepulvada v. Sepulvada, 29 Cal. 13; Paine v. Hutchinson, 49 Vt. 314; Miller v. Long Island R. R. Co., 71 N. Y. 380; Kennebec v. Springer, 4 Mass. 416; Slader v. Jefferson, 6 Cush. 129; Hale v. Gliddon, 10 N. H. 397; Washburn v. Cutter, 17 Minn. 361; Beatty v. Mason, 30 Md. 409; Carroll v. Gillion, 33 Ga. 539; Williams v. Wallace, 78 N. C. 354. See, also, Sule v. Barlow, 49 Vt. 329.

The possession must be accompanied with the claim of the fee, which together by construction of law is deemed prima facie evidence of such an estate. Wood on Lim., 514; Jackson v. Porter, 1 Paine, 457; Bartholomew v. Edwards, 1 Houst. Del. 17; Cooper v. Smith, S. & R. Penn. 26; Brown v. Gray, 3 Me. 126; Allen v. Holten, 20 Pick. 458; Betts v. Brown, 3 Mo. App. 20; McNamara v. Seaton, 92 Ill. 498; Skinner v. Crawford, 54 Iowa 119.

The action is barred by the statute of limitations, the full ten years required by statute having expired before its institution. Probst v. Trustees, etc., 129 U. S. 182, 190, 192.

If, after a cause is set for hearing, the bill is dismissed, either on plaintiff's own application or by reason of his default when the cause is called, such dismissal is equivalent to a dismissal on the merits, and may be pleaded in bar to another suit for the same matter. Adams Eq. 373; Dan. Chy. Pld. 659; Cummings v. Bennett, 8 Paige, 79; Sears v. Jackson, 3 Stock. (N. J.) 45; Burnbly v. Stainton, 24 Ala. 712; Borrowscale v. Tuttle, 87 Mass. 337; Foot v. Gibbs et al., 67 Id. 412. See, also, Farish v. N. M. M. Co., 5 N. M.; Biglow v. Winsor, 67 Mass. 301; Pickett v. Loggan, 14 Ves. 232; Cooper's Eq. 270; French v. French, 8 Ohio; Durant v. Essex Co., 7 Wall. 109; Walden v. Bodley, 14 Pet. 156; Hughes v. United States, 4 Wall. 23; Hood v. Gibbs, 1 Gray, 412.

It is well settled that no other person than the person in the adverse possession of property claiming it as his own, at the time of its sale, can sell and transfer a good title. Young v. Furgeson, 1 Litt. 298; Carnder v. Adams, 12 Wend. 297.

The conveyance to Gildersleeve was void, not only because it was made when the grantor was out of possession, but because the consideration was illegal. Burns v. Scott, 117 U. S. 582–589, citing Hilton v. Woods, L. R. 4 Eq. 432, and Bush v. Harper, 66 Mo. 51.

No cross-bill can be filed in any proceeding in a court of equity without first obtaining the consent of the chancellor. Bronson v. La Crosse R. R. Co., 2 Wall. 283.

Where a party comes into a proceeding voluntarily, as an intervenor, if the original complainants fail in their suit he also fails. Elderkin v. Fitch, 2 Car. (Ind.) 90; Cockrell v. Warner, 14 Ark. 346.

A cross-bill can only be filed when growing out of the subject-matter in the original bill, and where the complainants in the original bill are directly interested in the result of the subject-matter in legislation in the cross-bill. Gallatian v. Irwin, Hopk. (S. C.) 48; 8 Cow. 361; May v. Armstrong, 3 J. J. Marshall (Ky.) 262; Dannell v. Morrison, 6 Dana, 186; Fletcher v. Wilson, 1 S. & M. Chy. 376; Draper v. Gordon, 4 Sandf. C. R. 210; Josey v. Rogers, 13 Ga. 478; Slason v. Wright, 14 Ver. 208; Rutland v. Paige, 24 Id. 181; Cross v. De Valle, 1 Wal. (S. C.) 14; Hurd v. Case, 32 Ill. 45; Underhill v. Van Cortland, 2 Johns. C. R. 339–355; Morgan v. Smith, 11 Ill. 194; Adams Eq. 403; Andrews v. Hobson, 23 Ala. 219; Andrews v. Kimball, 12 Mich. 94; Griffith v. Merrit, 19 N. Y. 529; Ayers v. Carver, 17 How. (U. S.) 591; 3 Dan. Chy. Prac., sec. 1743.

O'BRIEN, C. J.—The subject-matter of the controversy involved in this suit is a tract of mining and pastoral land embracing about sixty-nine thousand, four hundred and fifty-eight acres, situate in Santa Fe county, known as the "Ortiz Mine Grant," conceded, in accordance with the laws of the republic of Mexico, in the year of 1833, to Jose Francisco Ortiz and Ignacio Cano. The latter, prior to his death, in 1836, conveyed to his cotenant, Ortiz, all his title and interest in the grant. It is not disputed that thereafter, in the year 1840 or 1841, Jose Francisco Ortiz and Dona Ines Montoya, his wife, jointly executed an instrument in writing, known as a "mutual will," of the tenor following:

"Third Stamp.        [Stamp.]        Two Reals.

"For the years of one thousand, eight hundred and forty and one thousand, eight hundred and forty-two. At the city of Santa Fe, capital of the department of New Mexico, on the fifteenth day of the month of August of one thousand, eight hundred and forty-one, before me, the citizen Albino Chacon, constitutional alcalde of the same, and by operation of law judge of the first instance, those of my attendance being present, with whom I act by special authority, appeared Don Jose Francisco Ortiz, a resident of the Real de Oro, and his living wife, Dona Maria Ines Montoya, both of whom I certify I know; and they together stated that whereas, God has not been pleased to give them from their marriage a child or forced heir living, they agree with each other that the one who shall survive the death of the other shall be the sole heir to everything that may be recognized as their property, in live stock, real estate, chattels, or in any other manner, without any relative of either of them preventing it, through any privileged right that he may allege; but in case that it should so happen, and that it should be attempted by any of them to institute

suit against the surviving party, the testators from this time request the national justices and in particular those who may have cognizance of this matter, that they be not heard either in or out of court, but rather they give authority to the judges in order that by all the rigor of law they may force and compel them to what is stipulated by this document, and to the guaranty thereof, as fully as if it were in definitive sentence pronounced in adjudicated cause, acquiesced in by them, and not appealed from. In witness and guaranty whereof they thus request me to authenticate it, which I do according to the provisions of law, with my attending witnesses; to which I certify.

"JOSE FRANCO ORTIZ.

"MARIA INES MONTOYA.

"[De Assa.]

"JOAQUIN YOMOJANO.

"JOSE ALBINO CHACON.

[De Assa.]

"FRANCO BACAY ORTIZ."

Jose Franco Ortiz dying in 1848, in the possession of the land, his widow, Maria Ines Montoya, continued in possession till 1853, when she conveyed the same to one John Grenier, who held such title until August 19, 1854, when he conveyed the same to Charles E. Sherman and his associates; who in turn, on July 10, 1864, conveyed the same to the New Mexico Mining Company, which took immediate possession thereof, and it and its corespondents have since continued in the possession of the whole, or a portion thereof; that said Ortiz Grant, in 1861, was duly confirmed by an act of congress; and thereafter, on May 20, 1876, a patent therefor was duly issued to the New Mexico Mining Company. The patent contains among other exceptions, the following reservation or proviso: "The confirmation of this said claim and this patent shall

only be construed as quitclaim or relinquishment on the part of the United States, and shall not affect the adverse rights of any other person or persons whomsoever." Plaintiff in error asserts his deraignment of title to an undivided one fourth interest in the premises, as follows: Denying the validity of the "mutual will," hereinbefore set out, he claims that said Jose Francisco Ortiz died intestate in 1848, leaving no direct heirs; but that he left as "collateral heirs," an only sister, Maria de Luz Ortiz, and Abran, Estefan, Ramon, Esmerejildo, Prudencia, and Macedonia Ortiz, children of his deceased brother, Ignacio Ortiz; that said Maria de Luz, sister of Jose Francisco Ortiz, subsequently intermarried with one Manuel Sanchez, and that she died intestate, leaving five children surviving; that one of said children, Rosaria, married one Rafael Romero, and that she sometime thereafter died intestate, leaving one child as heir, a daughter, Josefa Romero, who afterward married Jesus Garcia. It appears in evidence, and is not seriously disputed, that all of the foregoing representatives of Jose Francisco Ortiz, to wit, the children of his brother Ignacio, and the children and grandchildren of his sister Maria, had conveyed, at different times before the commencement of this suit, all their estate in the property in controversy to Elias Brevoort, and that the latter on July 1, 1880, conveyed an undivided one half thereof to the plaintiff in error and one John H. Knaebel; that Knaebel, on July 7, 1886, reconveyed his interest therein to said Brevoort. The contention of the plaintiff in error is that said "mutual will" is not only false and fraudulent, but void for want of proper execution; and hence that the widow of said Jose Francisco Ortiz only took at his death an undivided one half of his realty; that said collateral heirs of Ortiz took the remaining moiety; and that through their several and

MEXICAN grant:
adverse possession: limitation.

other mesne conveyances to his grantor, Brevoort, he is entitled to an undivided one fourth interest in the whole of the grant.   Under the pleadings, the issues presented were:  First, whether the interest in the grant of which Ortiz was seized passed, at the time of his death, in 1848, by virtue of the mutual will, to his widow, and from her to the respondent, the New Mexico Mining Company, or whether it passed to the descendants of his brother and sister, and from them to the complainant, to the extent of the quantity claimed in his bill of complaint; and second, admitting that the interest of Ortiz descended to the heirs of his brother and sister, is not complainant barred of the relief sought by the statute of limitations?

The suit from its commencement, in January, 1883, to the twenty-sixth day of December, 1888, when the final decree dismissing the bill was entered, had undergone various mutations as to parties, pleading, reports, and rulings, and it would subserve no useful purpose to attempt to give a summary of such complicated changes.  The case was submitted to a master, and complainants introduced proofs before him at divers times tending to support the allegations contained in his bill.   Defendant introduced in evidence the mutual will, and proof tending to show that the same had been executed by Ortiz and wife, in the presence of the alcalde and two assisting witnesses, and that such was the usual manner of executing wills in New Mexico at the time this will was made, and for more than thirty years prior thereto.   Defendant also introduced evidence tending to prove that, upon the death of Jose Francisco Ortiz, his widow, claiming under the will, took possession of the premises in question, and that she continued in such possession openly and notoriously until December, 1853, when she conveyed them; that her grantee entered into the possession thereof, and continued therein until they were con-

veyed to the New Mexico Mining Company, in 1864, when the latter entered into and has ever since continued in the actual possession thereof. There was also evidence tending to show that the respondent company and its grantees had worked and operated the mines upon said grant, built a large number of houses thereon, and kept tenants continually occupying said houses, built and operated two separate gold mills, and spent several hundred thousand dollars in the improvement of the property, and regularly paid the taxes thereon. Complainant offered no testimony in rebuttal of such proof. Testimony was also introduced tending to show that there never had been such an office as an escribano or notary within this territory, as appeared from the records of the surveyor general's office, and that such office was the repository of the ancient Mexican archives and of wills, deeds, and other written documents affecting real estate; that the custodian of such office had thoroughly examined all of the wills upon file, some of which went back for a period exceeding one hundred years, and that more than ninety per cent of them had been executed before an alcalde and two witnesses. The master, when the case was last heard, found in favor of the respondents upon the plea of the statute of limitations, and passed upon no other matter, except that he found the mutual will to be invalid. Upon the final hearing of the master's report, the court confirmed the same, and dismissed the bill, deciding that the will of Ortiz was valid and operative, and that the statute of limitations had run against complainant's cause of action. Complainant, by writ of error, brings such decree to this court for review.

The errors assigned by complainant to warrant a reversal of the judgment are seven in number. The two principal ones relied upon in argument are: First, error committed in the district court in holding and

decreeing that the bill of complaint and cause of action therein set out was and is barred by the statute of limitations, and in overruling plaintiff's exception to so much of the master's report as found in favor of the bar of the statute. Second, error committed by the court below in holding and decreeing that the "mutual will" offered in evidence by the defendant was a valid and legal will, and in sustaining the exceptions of the defendant in error to so much of the master's report as held that said will was inoperative and invalid.

It is not disputed that Jose Francisco Ortiz was in the actual possession of a portion of the grant at the time of his death in 1848, claiming the whole of it, and that he was succeeded in such possession by his widow, who continued therein until 1853, when her grantee, John Grenier, took and held such possession until he conveyed his estate therein to Sherman and others, who took and continued such possession until 1858, when they conveyed to the New Mexico Mining Company. The latter company and its associates appear to have taken immediate possession under the deed, and to have continued to use and occupy, at least portions thereof, to the present time. Complainant does not claim possession for himself, nor in behalf of any of his grantors, since the death of Ortiz, in 1848. His proof shows that strangers, at different times, had entered and used certain portions of the grant, but in no way connects his claim of title with any real or supposed rights accruing to such occupants by virtue of such possession. The boundaries of the grant had not been fixed until September, 1861, when the surveyor general of New Mexico transmitted to the commisioner of the land office at Washington an official survey of the tract known as "Private Land Claim No. 43." It appears that congress, by an act approved March 1, 1860, entitled, "An act to confirm a certain private land claim in the territory of New Mexico,"

had on the report of the surveyor general of the terri-
tory, dated November 24, 1860, and before the filing of
the official survey and the field notes in the commis-
sioner's office, confirmed the grant according to the
recommendation of the surveyor general, and in
advance of the filing of the official description of the
grant.   The act became operative to pass the title to
the grant at least as soon as its boundaries were defi-
nitely fixed by the official survey, etc., of the surveyor
general, filed with the commissioner of the general
land office.   The history of the grant and the language
of the act of confirmation leave no doubt as to the
intention of congress:   "Provided that the foregoing
confirmation shall only be construed as quitclaim or
relinquishment on the part of the United States, and
shall not affect the adverse rights of any other person
or persons whomsoever."   In 1876 (May 20) a patent
issued to the New Mexico Mining Company for "the
tract of land embraced and described in the foregoing
survey, excepting and reserving from the transfer by
these presents so much of the land embraced in said
survey as is included within the survey of the Canon
del Agua grant, approved by the surveyor general of
the territory of New Mexico, on the sixteenth day of
October, 1866, and patented to Jose Serafin Ramirez,
his heirs and assigns, on the first day of July, A. D.
1875, and estimated to contain about two hundred and
fifty-nine acres as aforesaid; and with the further stip-
ulation that, in virtue of the provisions of the aforesaid
act of congress approved March 1, A. D. 1861, the
confirmation of this claim and this patent shall only be
construed as quitclaim or relinquishment on the part
of the United States, and shall not affect the adverse
rights of any other person or persons whomsoever."

It is clear that, as far as the rights of the parties
to this suit are concerned, the act of confirmation of
1861 was a grant in praesenti, and in effect conveyed

the title as soon, at least, as the boundaries were offi-
cially and definitely ascertained. It is true, in the
patent, about two hundred and fifty-nine acres, covered
by the act of confirmation, are excepted and reserved
to Jose Serafin Ramirez. The right to make such
reservation is expressly stipulated in the act of confir-
mation. The patent operated only as convenient doc-
umentary proof of the original grant, and of its subse-
quent ratification by congress, on the terms therein
expressed. Langdean v. Hanes, 21 Wall. 521. Elias
Brevoort, through whom complainant claims title,
obtained deeds, in 1873, from the collateral heirs of
Jose Francisco Ortiz, purporting to convey all the
interest which they had in the grant. Neither plaintiff,
nor any one of those through whom he claims title, was
ever in the possession of the premises, or any part
thereof, either in privity with or adverse to defendants,
or their grantees, at least since 1848. Defendants, on
the contrary, maintain, and offered evidence tending to
prove, that for more than twenty years prior to the
commencement of this suit they had been in actual
possession of a portion and in the constructive posses-
sion of all the premises in controversy, openly, contin-
uously, and adverse to all the world; claiming title to
the whole thereof through the grant and the act of con-
firmation of 1861. Section 1880, Compiled Laws, New
Mexico, provides that where any person shall be in
possession for ten years of any land granted by the
government of Spain or Mexico, "holding or claiming
the same by virtue of a deed or deeds of conveyance,
devise, grant, or other assurance purporting to convey
an estate in fee simple, and no claim by any suit in law
or in equity effectually prosecuted shall have been set
up or made to said lands, tenements, or hereditaments,
within the aforesaid time of ten years, then, and in that
case, the person or persons, their children, heirs, or
assigns, so holding possession as aforesaid, shall be

entitled to keep and hold in possession such quantity of land as shall be specified and described in his, her, or their deeds of conveyance, devise, grant, or other assurance as aforesaid, in preference to all, and against all, and all manner of person or persons whatsoever."

We are of opinion that the evidence in the cause amply sustains the finding of the master that the bar of the statute had attached before complainant brought his action. The testimony, it is true, is somewhat conflicting as to the nature and extent of defendants' actual possession; still, there is enough evidence, in our opinion, tending to show that defendants had maintained an open, adverse, and continuous possession under claim of title in fee for more than ten years before the bringing of this suit. This we hold is sufficient to bar plaintiff's right of recovery.

This brings us to the consideration of the second assignment of error, the invalidity of the "mutual will" WILL: attestation: validity. of Jose Francisco Ortiz and wife. This instrument was executed within the limits of the present territory, while the same was a political department of the republic of Mexico. It is a very peculiar document, almost unknown to our jurisprudence. If it were recognized by the laws of the sister republic, and executed in accordance therewith, or in accordance with prevailing customs and usages, having the force of law, it is the duty of the courts of this territory to give it the same legal effect as it would receive had no change of government taken place. "The laws heretofore in force concerning descents, distributions, wills, and testaments, as contained in the treatise on these subjects written by Pedro Murillo Velarde, shall remain in force, so far as they are in conformity with the constitution of the United States and the state laws in force for the time being." Section 1, Kearney Code, September 22, 1846: Leitensdorfer v. Webb, 20 How. (U. S.) 177. Escriche (Dict. de Leg. y Jur., p. 1498)

defines such instrument as follows: "A mutual testament is one which two persons reciprocally make in favor of the survivor, as when husband and wife constitute themselves heirs, the one to the other, in case of their dying without forced heirs. In the execution of these testaments, whether open or sealed, the same solemnity should be observed and the same number of witnesses should be present as in those made by a single testator, except that the number of witnesses need not be doubled because of there being two testators." The instrument in question was what is known as an "open" or "nuncupative" testament. The two kinds of wills are thus defined by Velarde (Prac. de Test., cap. 1, p. 3): "As a person may declare his will by writing or by word of mouth, it follows that wills are divided into two classes—written, generally called 'cerrado' or sealed, when the testator expresses his will on paper written and sealed, declaring it to be his testament, in the presence of seven witnesses, and before a notary, who should sign their names upon the cover or envelope with the testator; nuncupative, which is also called 'abierto' or open, and which is the most common, and is authenticated when the testator manifests his will by word of mouth before witnesses, with the formalities required by law." After enumerating the several formalities required in the execution of wills, he proceeds: "The second formality is the presence of witnesses. For an abierto or open will, three are, at least, required, residents of the neighborhood where the will is made; besides, it should be executed before a notary public, or escribano publico. If there be no notary, five witnesses, residents of the neighborhood, should be present; and if that number can not be obtained, three will suffice." This testament, executed in 1841, one of the joint makers dying in 1848, is an ancient document. No indicia of suspicion, fraud, or alteration appear upon its face. It is

found in the custody of those claiming and holding possession of the property referred to therein, including the Alcalde Chacon. It purports to have been executed by the parties in the presence of three attesting witnesses. Hence every reasonable presumption should be indulged in favor of its validity. Assuming that five witnesses, residents of the vicinity, could not be obtained to attest its execution, we are of the opinion that the will was executed in the presence of three witnesses, and that such number was sufficient to make its execution regular and valid. Besides, there is abundant evidence showing that the republic of Mexico never furnished the department of New Mexico with such an officer as an escribano publico, before whom wills could be executed according to the provisions of law; that, in such emergency, the people of this distant dependency, ex necessitate rei, had been accustomed to execute such instruments in presence of an alcalde or judge of the first instance, before two attesting witnesses; that such custom had been general, continuous, accepted, and recognized as having the force of law for at least a hundred years before the date of the will in question. The expert, Diego Archuleta, a Mexican lawyer, and former member of the Mexican congress, swears positively to the existence of this custom. An examination of the archives, deeds, wills, etc., in custody of the proper depository in Santa Fe, corroborates the testimony of the expert on this point. Such being the custom, a will executed in accordance therewith is valid. Adams v. Norris, 23 How. (U. S.) 353; Panaud v. Jones, 1 Cal. 497; Von Schmidt v. Huntington, Id. 55; Castro v. Castro, 6 Cal. 158; Lewis v. Pitcher, 10 Cal. 465. In connection herewith, see Pino v. Hatch, 1 N. M. 130; Hayes v. Bona et al., 7 Cal. 154. It is always safe to adopt every reasonable presumption in favor of the validity of an instrument of this character. Husband and wife, in the absence of children, deter-

mine, in view of the probable death of the one before the other, to make adequate provision for the wants and comforts of the survivor. The husband dies in 1848. The widow claims and asserts her rights under the will as the absolute owner of all the property of which he died possessed. She disposes of such rights to bona fide purchasers. For more than forty years before this suit was commenced, they occupy, improve, and pay taxes on this property. Plaintiff's grantor, and those through whom such grantor claims title, relatives of the deceased Ortiz, and residing in the vicinity of the grant, remain silent; acquiesce by such silence in the disposition so made of the property for so long a period, while the same is being enhanced in value by the capital and labor of honest purchasers or occupants. In fact, not a word is heard from any of the kindred in relation to the matter until they relinquish, for a trifling consideration, all their interest therein to plaintiff's grantor. Aside from the merits of the case, public policy does not favor the disturbing of vested rights without very grave and satisfactory reasons. The foregoing views dispose of all questions raised by plaintiff in error, and render unnecessary a consideration of the points raised by defendant as to the legal status of the cross bill and the charge of champerty. We may state, however, as a matter of justice to the professional character of the gentlemen charged, that we do not find any ground upon which to base even a suspicion of improper conduct. Finding no error in the record, the judgment should be affirmed.

LEE, SEEDS, and McFIE, JJ., concur.